676 P.2d 247

**STATE of New Mexico,
Plaintiff-Appellee,**

v.

**Curtis WORLEY, Defendant-Appellant.**

No. 14691.

Supreme Court of New Mexico.

Jan. 13, 1984.

Janet E. Clow, Chief Public Defender, William P. Slattery, Asst. Appellate Defender, Santa Fe, for defendant-appellant.

Paul Bardacke, Atty. Gen., William McEuen, Asst. Atty. Gen., Santa Fe, for plaintiff-appellee.

## OPINION

STOWERS, Justice.

Defendant Curtis Worley was tried by jury and convicted in the District Court of Eddy County for one count of first degree murder and one count of criminal sexual penetration in the first degree. The jury did not find the aggravating circumstances of NMSA 1978, Section 31–20A–5(B) (Repl. Pamp.1981) that the murder was committed with intent to kill in the commission of criminal sexual penetration. The defendant was sentenced to life imprisonment for the conviction of first degree murder.

From this conviction defendant appeals. We affirm.

The issues on appeal are:

1. Whether the trial court abused its discretion in allowing the state to demonstrate the possible bias of a defense witness because of the witness's commission of a similar offense.

2. Whether the defendant was denied a fair trial by the actions of the prosecutor and the trial court concerning the testimony of co-defendant Carl Case.

The facts of this case have been set out in detail in *State v. Case*, 100 N.M. 714, 676 P.2d 241 (1984).

## Possible Bias of a Defense Witness.

During defendant's case in chief, Bobby Phillips (Phillips) was called as an alibi witness. Phillips testified that he, the defendant's brother, and the defendant were together on January 1, 1982 when the rape and murder of Nancy Mitchell was alleged to have occurred. Phillips further testified that they did not attend any parties that evening. Between direct and cross-examination of Phillips, a discussion was held out of the jury's presence regarding Phillips' prior juvenile adjudication. In 1980, Phillips had been adjudicated a delinquent for committing criminal sexual penetration. The trial court determined that the prosecutor could ask Phillips about commission of the act, provided he did not question the witness about the adjudication. On cross-examination, the prosecution asked Phillips a series of questions relating to January 1, 1982 and his whereabouts that day. Central to this line of questioning was whether he accurately remembered January 1, 1982 as the date he spent the evening with the defendant and defendant's brother. Phillips admitted he was unsure of the date until he talked to his parents and the defendant's brother who assured him that it was indeed January 1, 1982 when he spent the evening with the defendant and the defendant's brother. Phillips went on to testify that he was still not sure of the date. The final question asked of Phillips on cross-examination was as follows:

Mr. Phillips, isn't it true that you yourself have committed criminal sexual penetration?

Phillips answered yes to this question. No further questions were asked of this witness, nor was Phillips' conduct mentioned by the prosecutor in closing or rebuttal arguments.

■ The defendant argues that the trial court erred in allowing the State to impeach a key defense alibi witness with a specific act of misconduct which was not probative of truthfulness. Evidence of character and the conduct of witnesses is governed by NMSA 1978, Evid.Rule 608

(Repl.Pamp.1983). NMSA 1978, Evid.Rule 609 (Repl.Pamp.1983) involves impeachment by evidence of conviction of a crime. Although Rule 609(c) generally excludes evidence of juvenile adjudication from questioning concerning prior convictions, this exclusion does not prohibit questioning if probative of truthfulness or untruthfulness. *State v. Wyman,* 96 N.M. 558, 632 P.2d 1196 (Ct.App.1981). In the present case, however, the prosecutor's question concerned the commission of a specific instance of conduct, not an adjudication. The prosecutor argued that because Phillips committed one of the same offenses for which the defendant was on trial, this showed that Phillips attached minimal importance to the charge and would be willing to lie for the defendant. Extrinsic evidence of a motive of a witness to testify falsely is admissible. *State v. Lovato,* 91 N.M. 712, 580 P.2d 138, *cert. denied,* 91 N.M. 751, 580 P.2d 972 (1978); *State v. White,* 58 N.M. 324, 270 P.2d 727 (1954). This evidence is similar to evidence of a witness's bias or prejudice and a witness may be cross-examined as to such motive. *State v. Lovato.*

■ In this case, it was relevant to probe and determine the motive of the witness. This witness had previously committed criminal sexual penetration and was testifying for the defendant, who was also charged with the same offense. Therefore, it was relevant and proper to cross-examine Phillips to demonstrate truthfulness or untruthfulness, bias and prejudice. Moreover, the major focus of Phillips' cross-examination showed that he was unsure of the most critical element of his testimony— the date he was with the defendant and the defendant's brother.

■ Admission of evidence is entrusted to the discretion of the trial court, and rulings of the trial judge will not be disturbed absent a clear abuse of discretion. *State v. Stout,* 96 N.M. 29, 627 P.2d 871 (1981). Under these facts, we find the trial court did not abuse its discretion.

**Testimony of Co-Defendant Carl Case.**

As part of its case in chief, the State called co-defendant Carl Case (Case) to testify. Case had been convicted of the same charges in an earlier proceeding. The prosecutor tendered a limited use immunity order for Case which the trial court signed. Case was voir dired by defense counsel, and he stated that he understood how to invoke his privilege against self-incrimination. In response to the prosecutor's second question, Case stated he currently resides in the penitentiary. No objection was made by defense counsel. Case initially declined to answer whether he knew the defendant but subsequently admitted he did and then answered a series of questions concerning his own activities and those of the victim on the day in question. Case then refused to state what he did the evening of January 1, 1982, nor would he state who he was with that evening.

The trial court threatened to hold Case in contempt for each question he refused to answer, and to sentence him to consecutive one year sentences for each such instance of refusal. The trial court stated that the contempt sentences would be consecutive to the time Case was already serving. The defendant moved for a mistrial based on the trial court's reference to Case's trial and conviction. The trial court denied the defendant's motion, and Case was found in contempt of court for each failure to respond. *See State v. Case,* 100 N.M. 173, 667 P.2d 978 (Ct.App.1983) (refusals to answer by witness constituted but one contempt because there was but one subject of inquiry).

On cross-examination defense counsel first asked Case if he would refuse to answer any questions concerning testimony he gave at his own trial. Case stated that he would not answer, and defense counsel proceeded to ask five questions relating to his trial testimony. Case was found in contempt of court for each failure to answer. Case was later cited for contempt for failure to answer a question asked during redirect examination and for a question

asked by the prosecution when Case was recalled as a rebuttal witness.

During defendant's trial, the trial court, both counsel as well as several witnesses, made numerous references to Case's trial without objection. Moreover, the eyewitnesses to the rape and murder of Nancy Mitchell all mentioned that Case was present and actively involved.

After both sides rested, the trial court admonished the jury not to discuss the contempt of Case at all during deliberation and not to consider Case's action in any way in deciding the guilt or innocence of the defendant. The trial court further instructed the jury not to consider any statements from the transcript of Case's trial read by either attorney, nor were they to consider the fact that Case did not answer certain questions. The trial court again admonished the jury following closing arguments and provided two instructions to the jury which instructed the jury again not to consider Case's contempt, the trial court's actions toward Case, or his refusals as evidence in determining the defendant's guilt or innocence.

The defendant argues that statements and actions of the trial court prejudiced him by allowing the jury to infer that Case had been convicted of the same crime for which defendant was on trial. The defendant contends that Case's previous conviction created the impression that defendant was also guilty and that the trial court gave this impression to the jury when citing Case for contempt. While it is true that the trial court's warning to Case concerning his testimony and the consequences of refusal refers to the fact that Case was already serving a sentence, the jury was already aware that Case was serving time. On direct examination, two preliminary questions regarding Case's incarceration were asked in the presence of the jury. The defendant did not object to these references. When the trial court later referred to Case's incarceration, the jury was told nothing new. In the present case, there were repeated references to Case's trial and his involvement in the attack on Nancy Mitchell. The jury knew that Case's term in the penitentiary resulted from a conviction for that crime.

 We find that the trial court's actions, under these circumstances, were not in error. The trial court was faced with a difficult and recalcitrant witness who refused to answer certain relevant questions. Furthermore, the witness had no legal right to refuse to answer since he had already been tried on the same charges and had been granted immunity to testify. A trial court can obviously use its contempt powers to compel testimony wrongfully withheld. *State v. Boeglin*, 100 N.M. 470, 672 P.2d 643 (1983); *State v. Sanchez*, 89 N.M. 673, 556 P.2d 359 (Ct.App.1976). Moreover, a mistrial is not mandated when the trial court finds it necessary to exercise its contempt powers in the presence of the jury. *State v. Sheffield*, 55 N.M. 150, 228 P.2d 431 (1951); *State v. Parks*, 25 N.M. 395, 183 P. 433 (1919). Motions for mistrial are directed to the discretion of the trial court. *State v. Perez*, 95 N.M. 262, 620 P.2d 1287 (1980). In the present case, the trial court did not abuse that discretion by denying defendant's motion for mistrial. Furthermore, the trial court gave two admonitions and two instructions to the jury directing them not to consider Case's contempt citations and the trial court's conduct toward Case. Such admonitions have been held to cure any error caused by the knowledge of a co-defendant's guilt. *See United States v. Edwards*, 366 F.2d 853 (2nd Cir. 1966), *cert. denied*, 386 U.S. 908, 919, 87 S.Ct. 852, 882, 17 L.Ed.2d 782, 790 (1967); *State v. Anaya*, 79 N.M. 43, 439 P.2d 561 (Ct.App.1968).

 The defendant also contends that he was prejudiced by the prosecutor's questioning of Case about the assault of Nancy Mitchell knowing that the witness would invoke his Fifth Amendment privilege against self incrimination. A review of the record shows that the prosecution did not know for sure that Case would not testify. *Namet v. United States*, 373 U.S. 179, 83 S.Ct. 1151, 10 L.Ed.2d 278 (1963) discusses a type of prosecutorial misconduct which

occurs when the government calls witnesses to the stand, knowing they will invoke their Fifth Amendment privilege, in order to build a case from unfavorable inferences which could be drawn from their silence. *State v. Vega*, 85 N.M. 269, 511 P.2d 755 (Ct.App.1973) recognizes this theory. In *Vega*, prejudice was found when the prosecution called as rebuttal witnesses, persons who were present at an illegal drug sale, who had not been charged, and who the prosecution admitted knowing would decline to testify.

In contrast to the situation in *Vega*, the prosecutor in this instance had a reasonable belief that Case might testify. Defense counsel also admitted being uncertain as to what Case would do. Moreover, as previously mentioned, the trial court made it clear that it would use all of its power to attempt to compel Case's testimony. Case answered the first eight questions asked by the prosecutor. After being ordered by the trial court to testify, Case answered certain questions he had initially refused to answer plus over forty additional questions before refusing to answer again. Under these circumstances, the prosecutor had a right to assume that Case would testify or that his testimony could be compelled. *Rado v. Connecticut*, 607 F.2d 572 (2nd Cir.1979), *cert. denied*, 447 U.S. 920, 100 S.Ct. 3009, 65 L.Ed.2d 1112 (1980); *see also United States v. Harper*, 579 F.2d 1235 (10th Cir.), *cert. denied*, 439 U.S. 968, 99 S.Ct. 459, 58 L.Ed.2d 427 (1978).

Furthermore, we find that the prosecutor did not build his case from inferences supplied by Case's silence. Inferences from Case's silence could not be considered the only or even the chief source of evidence presented against the defendant. *Namet v. United States*. The State also presented substantial eyewitness testimony.

 Nor do we agree with defendant that the prosecutor's questioning of Case amounted to testimony untested by cross-examination. The defendant argues that Case's refusals to answer added critical weight to the State's case, in a form not subject to cross-examination. We find

this theory does not apply to the present case. The only inferences which could be drawn from Case's silence were cumulative of the evidence given by three eyewitnesses who testified regarding the attack of the victim. Cumulative evidence does not supply the "critical weight" required under the *Namet* standard. *Rado v. Connecticut*; *see also United States v. Harper*.

The defendant, citing *Douglas v. Alabama*, 380 U.S. 415, 85 S.Ct. 1074, 13 L.Ed.2d 934 (1965), further argues that Case's silence operated to prevent him from confronting and cross-examining Case. In *Douglas*, a co-defendant took the stand and the prosecutor proceeded to read his confession which implicated Douglas. The co-defendant refused to answer any questions about the confession, claiming privilege. The confession was the only evidence which implicated Douglas. In the present case, no confession was read, rather the prosecutor during rebuttal read an answer given by Case during his trial. The answer described an altercation between Case and the defendant over the victim and a threat made by the defendant to Case. Case refused to acknowledge making the statement. Moreover, the defendant's attorney also read questions and answers of Case from his trial which Case refused to acknowledge.

 Violation of the right to confront witnesses must work some prejudice to the defendant, such as happened in *Douglas*, in order for there to be reversible error. *Frazier v. Cupp*, 394 U.S. 731, 89 S.Ct. 1420, 22 L.Ed.2d 684 (1969). Where an unconfronted witness does not form a vitally important part of the State's case, no prejudicial error is shown. *Id.* In this matter, neither Case's testimony nor his refusals to answer formed an important part of the State's case. Furthermore, through the testimony of three eyewitnesses, the defendant was identified as having been the primary attacker of the victim.

We find that the defendant was not denied a fair trial by the actions of the prosecutor and the trial court concerning the testimony of Carl Case. In the present

case, the only statements the prosecutor used were derived from Case's testimony in open court, and therefore carried more of an indicia of reliability. Under this set of facts, we find the use of these statements did not serve to prejudice the defendant. Furthermore, the trial court's admonitions and instructions given to the jury operated to protect defendant's right to confront adverse witnesses.

Having found no error by the trial court, the defendant's convictions are affirmed.

IT IS SO ORDERED.

SOSA, Senior Justice, and RIORDAN, J., concur.