**IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO**

**Opinion Number: 2022-NMCA-009**

**Filing Date: December 6, 2021**

**No. A-1-CA-38469**

**STATE OF NEW MEXICO,**

Plaintiff-Appellee,

v.

**GREGORY A. WOOD,**

Defendant-Appellant.

**APPEAL FROM THE DISTRICT COURT OF OTERO COUNTY**
**Angie K. Schneider, District Judge**

Released for Publication March 1, 2022.

Hector H. Balderas, Attorney General
Santa Fe, NM
Lauren Joseph Wolongevicz, Assistant Attorney General
Albuquerque, NM

for Appellee

Bennett J. Baur, Chief Public Defender
MJ Edge, Assistant Appellate Defender
Santa Fe, NM

for Appellant

**OPINION**

**HANISEE, Chief Judge.**

**{1}**     This opinion, in which we resolve three consolidated appeals arising from two distinct cases, entails one issue of first impression: whether our Supreme Court's 2012 holding in *State v. Office of Public Defender ex rel. Muqqddin*, 2012-NMSC-029, 285 P.3d 622, applies retroactively to bar use of Defendant's prior felony burglary conviction to enhance a subsequent sentence arising from unrelated charges under the Habitual Offender Act (the Act), NMSA 1978, Section 31-18-17 (2003). Separately, Defendant argues that (1) the district court lacked jurisdiction to resentence him as a habitual

offender; (2) his sentencing was impermissibly delayed; (3) his rights to a speedy trial were violated; (4) the district court erred in denying his motion to suppress evidence; (5) the district court erred in awarding him presentence confinement credit; and (6) the State improperly questioned him during cross-examination. Defendant appeals three district court orders: the denial of his petition for post-sentence relief under Rule 5-803 NMRA (Defendant's Rule 5-803 petition) following a 2010 case in which Defendant was convicted of burglary of a vehicle; the judgment and sentence in a 2015 case in which Defendant was convicted of possession of marijuana and methamphetamine; and the amended judgment and sentence for Defendant's convictions in the 2015 case in which his sentence was enhanced under the Act. We affirm in part and reverse in part.

## BACKGROUND

### The 2010 Case

**{2}** In November 2010, Defendant was charged with burglary of a vehicle, contrary to NMSA 1978, Section 30-16-3(B) (1971); possession of burglary tools, contrary to NMSA 1978, Section 30-16-5 (1963); and resisting, evading or obstructing an officer, contrary to NMSA 1978, Section 30-22-1(C), (D) (1981). Defendant pleaded guilty to the burglary and resisting, evading or obstructing an officer charges, and was sentenced to approximately two-and-a-half years of probation. Defendant's burglary conviction was premised upon his siphoning gasoline from a vehicle's gas tank.

**{3}** In January 2016, following completion of his sentence related to his 2010 convictions, Defendant filed pro se a Rule 5-803 petition challenging his conviction for burglary in light of *Muqqddin*, which Defendant argued should be applied retroactively. In *Muqqddin*, the Court held for the first time that the act of penetrating a vehicle's gas tank and removing gas therefrom did not constitute burglary under Section 30-16-3. *Muqqddin*, 2012-NMSC-029, ¶¶ 1, 12, 63. The district court held a hearing on Defendant's Rule 5-803 petition at which the district court concluded that *Muqqddin* announced a new rule that did not apply retroactively to Defendant's past felony burglary conviction. The district court subsequently denied Defendant's Rule 5-803 petition. On August 22, 2016, Defendant filed a pro se appeal from the district court's denial of his Rule 5-803 petition.

### The 2015 Case

**{4}** In January 2015, Defendant was charged with resisting, evading or obstructing an officer, contrary to Section 30-22-1(B); failure to yield right-of-way while entering highway from private road or driveway, contrary to NMSA 1978, Section 66-7-331 (1978); possession of marijuana (one ounce or less), contrary to NMSA 1978, Section 30-31-23(A) (2011, amended 2021); possession of a controlled substance (felony—methamphetamine), contrary to Section 30-31-23(F); possession of drug paraphernalia, contrary to Section 30-31-25.1(A); and two counts of nonresidential burglary, contrary to Section 30-16-3(B).

**{5}** The charges arose from a December 18, 2014, callout in which law enforcement responded to an alarm at an auto shop. The first officer to arrive at the scene witnessed a man with white or blonde hair and wearing a black jacket jump over the fence behind the auto shop. Another officer at the scene located a person who matched that description in an adjacent parking lot, but the subject got into a white Chevrolet Camaro and fled the scene. Officers ran the license plate of the white Camaro and learned the vehicle was registered to a Carl Wood, Defendant's father. After the white Camaro fled the scene, officers received a tip that Defendant was driving the vehicle and pursued the vehicle to an address—an address for which a search warrant was later granted and that was eventually identified as Defendant's home. Back at the auto shop, officers learned that two locks had been cut off two different storage sheds. One officer found items belonging to the auto shop—including a gas tank and a vehicle stereo—on the ground near the auto shop property. Officers did not find the missing locks during their search of the auto shop property. Officers executed the search warrant of Defendant's home, and found baggies containing green leafy substances appearing to be marijuana, and white crystal substances appearing to be methamphetamine, as well as pipes and a digital scale. Defendant was arrested.

**{6}** Following a jury trial, Defendant was found guilty of all charges except the two counts of nonresidential burglary. On September 26, 2017, the State filed an amended supplemental criminal information[1] in which it sought enhancement of Defendant's sentence in the 2015 case under the Act, NMSA 1978, Sections 31-18-17 to -20 (1977, amended 2003). The enhancement was based on Defendant's 2010 felony vehicle burglary conviction as well as an unrelated felony trafficking conviction arising from an unrelated 2013 case. The district court entered an amended judgment and sentence on August 15, 2019, determining Defendant to be a habitual offender as alleged by the State and enhancing Defendant's sentence in the 2015 case. Thereafter, on August 27, 2019, Defendant filed his notice of appeal from the district court's amended judgment and sentence.

## DISCUSSION

**{7}** On appeal, Defendant argues the district court failed to apply *Muqqddin* retroactively and erred in a variety of ways related to the 2015 case and his enhanced sentence therein. We address the *Muqqddin* question first, followed by each remaining issue in turn.

### I. *Muqqddin* Announced a New Rule That Applies Retroactively

**{8}** Defendant argues that the district court erred by relying on his felony burglary conviction in the 2010 case to enhance his sentence in the 2015 case under the Act.[2]

---

[1]The State filed a supplemental criminal information on August 23, 2017, and subsequently filed the amended supplement criminal information in which it corrected Defendant's date of conviction.
[2]Defendant does not argue that the district court erred by relying on his felony trafficking conviction from the unrelated 2013 case to enhance his sentence and our discussion in this regard, therefore, focuses solely on Defendant's argument regarding the district court's reliance on his felony burglary conviction.

Specifically, Defendant contends that *Muqqddin* applies retroactively, as argued in his Rule 5-803 petition, because the conduct underlying Defendant's felony auto burglary conviction—siphoning gas out of a vehicle's gas tank—would by 2015 only have constituted a misdemeanor and, therefore, could not have been used to enhance his sentence. If correct, Defendant's felony conviction should be disqualified as an enhanced felony under the Act.

**{9}** "We review the retroactive application of a judicial opinion de novo." *Ramirez v. State*, 2014-NMSC-023, ¶ 9, 333 P.3d 240. Here, we must resolve whether *Muqqddin* applies retroactively to Defendant's Rule 5-803 collateral attack on his 2010 conviction. *See State v. Otero*, 2020-NMCA-030, ¶¶ 2, 4, 464 P.3d 1084 (clarifying that Rule 5-803 formalized the concept of coram nobis, a type of request for relief in a post-judgment challenge); *see also State v. Gutierrez*, 2016-NMCA-077, ¶ 29, 380 P.3d 872 (explaining that a petition for coram nobis was a "collateral attack . . . similar to a petition for a writ of habeas corpus" (citation omitted)). In *Kersey v. Hatch*, 2010-NMSC-020, 148 N.M. 381, 237 P.3d 683, our New Mexico Supreme Court established that we rely on the framework set forth by the United States Supreme Court in *Teague v. Lane*, 489 U.S. 288 (1989), when determining whether a particular case shall be given retroactive effect in a collateral proceeding. *Kersey*, 2010-NMSC-020, ¶¶ 25-26. The *Kersey* Court—faced with the question of whether *State v. Frazier*, 2007-NMSC-032, 142 N.M. 120, 164 P.3d 1, should apply retroactively to habeas corpus proceedings— clarified that *Teague* modified the "approach to retroactivity for cases on collateral review" and concluded that *Teague* provided "the proper standard by which to determine whether new rules should apply retroactively to habeas corpus proceedings." *Kersey*, 2010-NMSC-020, ¶¶ 1, 23, 25.

**{10}** There are two circumstances in which a judicial opinion may apply retroactively: the first arises when an opinion announces a new rule. *See Teague*, 489 U.S. at 301; *see also Kersey*, 2010-NMSC-020, ¶ 15 ("An appellate court's consideration of whether a rule should be retroactively or prospectively applied is invoked only when the rule at issue is in fact a new rule." (internal quotation marks and citation omitted)). The second circumstance arises when an opinion reiterates or applies a preexisting "old" rule. *See State v. Trammell*, 2016-NMSC-030, ¶¶ 19, 21-22, 387 P.3d 220 (explaining that where an opinion reiterated an attorney's obligation to advise the defendant regarding implications of a guilty plea for charged sex offenses, such opinion did not set forth a new rule under the *Teague* framework, but rather stated a preexisting rule placing an affirmative duty on counsel and would thus be applied retroactively); *see also State v. Ramirez*, 2012-NMCA-057, ¶¶ 16-17, 278 P.3d 569 (concluding the same regarding reiteration of an attorney's obligation to advise the defendant regarding the risk of immigration consequences associated with a plea).

**{11}** Accordingly, in order to determine whether *Muqqddin* might apply retroactively, we must first determine as a threshold matter whether the case either announced a new rule or reiterated a preexisting rule. *Kersey*, 2010-NMSC-020, ¶ 15; *see Trammell*, 2016-NMSC-030, ¶¶ 19, 21-22. "A case generally announces a new rule when it breaks new ground or imposes a new obligation on the [s]tates or the [f]ederal [g]overnment."

*Kersey*, 2010-NMSC-020, ¶ 16 (internal quotation marks and citation omitted). Stated differently, "a case announces a new rule if the result was not dictated by precedent existing at the time the defendant's conviction became final" or when an appellate court's "decision is flatly inconsistent with the prior governing precedent and is an explicit overruling of an earlier holding." *Id.* (internal quotation marks and citations omitted).

**{12}**   In *Muqqddin*, the Court explained that existing precedent regarding burglary of a vehicle wrongly expanded the scope of what could constitute the "prohibited space" of a vehicle under the burglary statute. 2012-NMSC-029, ¶¶ 1, 22-23, 32, 34. The *Muqqddin* Court concluded that New Mexico case law had "gone astray," stating that its opinion "alter[ed the] course" of burglary law by "look[ing] behind the words of the burglary statute, searching for the thoughts that gave birth to the text" in order to adhere to the intent of the statute. *Id.* ¶ 1. As well, the Court abrogated and explicitly rejected further use of or reliance on *State v. Rodriguez*, 1984-NMCA-034, ¶ 3, 101 N.M. 192, 679 P.2d 1290, which the Court credited for establishing the misguided view that "any part of a vehicle equals an entry of that vehicle for the purposes of [the] burglary" statute. *Muqqddin*, 2012-NMSC-029, ¶¶ 36, 38. The Court went on to specify that it disagreed with the "unworkable standard" presented by the "notion that any penetration of a vehicle's perimeter constitutes a penetration of the vehicle itself[,]" *id.* ¶ 46, and advised lower courts that the conduct at issue—penetrating a gas tank and removing gas therefrom—should be prosecuted under alternative statutes in order to avoid any further expansion and misapplication of the burglary statute. *Id.* ¶¶ 50-53, 63.

**{13}**   Here, Defendant first argues that *Muqqddin* did not announce a new rule but rather reiterated a preexisting rule by "interpreting the [L]egislature's intent in enacting the burglary statute." While the *Muqqddin* Court did, in fact, interpret the legislative intent of the burglary statute, as Defendant correctly asserts, the Court also expressly abrogated existing precedent and imposed new obligations on the State and lower courts to narrow the scope of what conduct is prosecuted under the burglary statute. *See id.* ¶¶ 38, 46, 50-53, 63; *see also Teague*, 489 U.S. at 301 (setting forth the definition of a new rule as one that "breaks new ground or imposes a new obligation"). Moreover, *Muqqddin*'s holding was not dictated by precedent that existed when Defendant's 2010 conviction became final. *See* 2012-NMSC-029, ¶¶ 36-38; *see also Teague*, 489 U.S. at 301 (stating that "a case announces a new rule if the result was not *dictated* by precedent existing at the time the defendant's conviction became final"). As such, under applicable jurisprudence delineating whether a precedential opinion announces a new rule, we conclude that *Muqqddin* announced a new rule.

**{14}**   Having concluded that *Muqqddin* announced a new rule, we must next determine whether that new rule should be given retroactive effect. *See Kersey*, 2010-NMSC-020, ¶ 15. A new rule will be applied retroactively only if "it falls within one of the two exceptions established . . . in *Teague*: (1) it is a substantive [new] rule that alters the range of conduct or the class of persons that the law punishes, or (2) it is a [new] watershed rule of criminal procedure." *Kersey*, 2010-NMSC-020, ¶ 31. Of relevance here is the substantive new rule exception, which refers to new rules that "narrow the

scope of a criminal statute by interpreting its terms, as well as constitutional determinations that place particular conduct or persons covered by the statute beyond the State's power to punish." *Welch v. United States*, 578 U.S. 120, ___, 136 S. Ct. 1257, 1264-65 (2016) (internal quotation marks and citation omitted); *see also Schriro v. Summerlin*, 542 U.S. 348, 351-52 (2004) (explaining that a substantive new rule "narrow[s] the scope of a criminal statute by interpreting its terms").[3]

**{15}**  Defendant next contends that if *Muqqddin* announced a new rule, that rule is a substantive rule that "alters the range of conduct . . . that the law punishes." *Kersey*, 2010-NMSC-020, ¶ 31. With this we agree. In holding that puncturing a vehicle's gas tank and removing gas therefrom could no longer be charged as burglary, the *Muqqddin* Court explicitly narrowed the scope of New Mexico's burglary statute as interpreted by prior caselaw. *Muqqddin*, 2012-NMSC-029, ¶¶ 50-53, 63. In *Schriro*, the United States Supreme Court emphasized that substantive new rules are given retroactive effect because such rules "carry a significant risk that a defendant stands convicted of an act that the law does not make criminal or faces a punishment that the law cannot impose on him." 542 U.S. at 352 (internal quotation marks and citation omitted). Defendant's position epitomizes the importance of the above proposition from *Schriro*: were Defendant to be prosecuted today for the act of siphoning gas from a vehicle's gas tank, he could not be convicted of the crime of burglary. Were this Court to hold that *Muqqdin*'s new rule did not apply retroactively, our ruling would conflict with both *Schriro* and *Kersey* because Defendant would be punished in a manner contrary to that allowed under law—specifically, he would receive an enhanced sentence based on a felony burglary conviction that the *Muqqddin* court made clear should never have been prosecuted as a felony charge.

**{16}**  We therefore hold that the substantive new rule announced in *Muqqddin* applies retroactively and, therefore, Defendant's burglary conviction was erroneously relied upon to enhance his sentence in the 2015 case. In light of this holding, we decline to address Defendant's argument regarding the district court's jurisdiction to resentence Defendant as a habitual offender.

## II.     The District Court Did Not Err in Denying Defendant's Motions to Dismiss on Speedy Trial or Speedy Sentencing Grounds

---

[3]Defendant does not argue that *Muqqddin* announced a new watershed procedural rule, nor does our own review of the facts or record indicate that such is the case. Indeed, the narrow exception pertaining to watershed procedural rules allows retroactive application of new rules "that are necessary to the fundamental fairness or accuracy of a criminal proceeding." *Dominguez v. State*, 2015-NMSC-014, ¶ 20, 348 P.3d 183; *see also State v. Frawley*, 2007-NMSC-057, ¶ 42, 143 N.M. 7, 172 P.3d 144 ("The watershed exception is extremely narrow; since *Teague,* the [United States] Supreme Court has rejected every claim that a new rule satisfied the requirements for watershed status." (internal quotation marks omitted), *superseded by statute on other grounds by State v. Quintana*, 2021-NMSC-013, 485 P.3d 215. Indeed, new watershed procedural rules "regulate only the *manner of determining* the defendant's culpability[,] . . . alter the range of permissible methods for determining whether a defendant's conduct is punishable[,]" *Welch*, 136 S. Ct. at 1265 (internal quotation marks and citations omitted), and is inapplicable to the case at hand.

## A.    Speedy Trial

**{17}**    Defendant argues that his right to a speedy trial was violated in the 2015 case and that the district court erred in denying his motions to dismiss on speedy trial grounds. "In determining whether a defendant's speedy trial right was violated, [New Mexico] has adopted the United States Supreme Court's balancing test in" *Barker v. Wingo*, 407 U.S. 514 (1972). *State v. Smith*, 2016-NMSC-007, ¶ 58, 367 P.3d 420. "Under the *Barker* framework, courts weigh the conduct of both the prosecution and the defendant under the guidance of four factors: (1) the length of the delay; (2) the reasons for the delay; (3) the timeliness and manner in which the defendant asserted his speedy trial right; and (4) the particular prejudice that the defendant actually suffered." *Id.* (internal quotation marks omitted). Our courts emphasize that "the heart of the right to a speedy trial is preventing prejudice to the accused." *State v. Serros*, 2016-NMSC-008, ¶ 4, 366 P.3d 1121 (alteration, internal quotation marks, and citation omitted). When "reviewing a district court's ruling[s] on a speedy trial violation claim, we defer to the court's findings of fact, and we weigh and balance the *Barker* factors de novo." *Serros*, 2016-NMSC-008, ¶ 20.

**{18}**    Here, the total length of delay in the 2015 case was approximately twenty-nine months, spanning the date of Defendant's arrest on December 18, 2014, through the third jury trial on June 1, 2017. Throughout the delay, and despite the occurrence of a trial in 2016 and 2017, Defendant filed five motions to dismiss on speedy trial grounds. On December 7, 2016, the district court issued a written order in response to Defendant's fourth motion to dismiss, finding that the case was of intermediate complexity. Neither party challenges the district court's finding of intermediate complexity. We therefore conclude that the length of delay is presumptively prejudicial and weighs heavily in Defendant's favor. *See State v. Flores*, 2015-NMCA-081, ¶ 5, 355 P.3d 81 (explaining that in a case of intermediate complexity, a delay of fifteen months or more is presumptively prejudicial and weighs heavily in a defendant's favor).

**{19}**    This threshold determination of a presumptively prejudicial length of delay would typically trigger a full analysis of the *Barker* factors. *See State v. Dorais*, 2016-NMCA-049, ¶ 22, 370 P.3d 771. Where the *Barker* factors—length of delay, reason for delay, and assertion of the right—weigh heavily in favor of a defendant, the defendant need not prove prejudice for a court to conclude that the defendant's right to a speedy trial has been violated. *State v. Garza*, 2009-NMSC-038, ¶ 39, 146 N.M. 499, 212 P.3d 387. Such is not the case here. Rather, while the length of delay in this case weighs heavily in Defendant's favor, the reasons for the delay do not.

**{20}**    Our review of the record—including the district court's order denying Defendant's fourth motion to dismiss on speedy trial grounds—indicates that of the approximate twenty-nine months of total delay, twelve months were attributable to the State, eleven months were attributable to Defendant, and approximately six months were attributable to neutral delay.[4] On balance, the second *Barker* factor of reasons for the delay does

---

4Defendant devotes only a single paragraph in his brief in chief to the reasons for delay, broadly asserting that he "caused little, if any, of the delay in adjudicat[ion of] th[e] case[,]" and arguing that the

not weigh heavily in Defendant's favor. *See State v. Brown*, 2017-NMCA-046, ¶ 28, 396 P.3d 171 (explaining that where forty-two months of delay occurred—of which five months weighed in favor of the state, approximately eighteen months weighed in favor of the defendant, and approximately nineteen months weighed neutrally—the reasons for delay factor weighed only slightly to moderately, but not heavily, in favor of the defendant).

**{21}** In a speedy trial analysis, if any one of the three *Barker* factors does not weigh heavily in favor of a defendant, as is the case here, Defendant must show particularized prejudice in order to prove their speedy trial was violated. *See Garza*, 2009-NMSC-038, ¶¶ 39-40; *see also State v. Prieto-Lozoya*, 2021-NMCA-019, ¶ 46, 488 P.3d 715 ("Ordinarily, a defendant bears the burden of proof on this factor by showing particularized prejudice when claiming a speedy trial violation." (internal quotation marks and citation omitted)); *Dorais*, 2016-NMCA-049, ¶ 22 (stating that a defendant's failure to show particularized prejudice may preclude review of the *Barker* factors). "We analyze prejudice to a defendant in a speedy trial case in light of three defense interests: (i) to prevent oppressive pretrial incarceration; (ii) to minimize anxiety and concern of the accused; and (iii) to limit the possibility that the defense will be impaired." *State v. Smith*, 2016-NMSC-007, ¶ 60, 367 P.3d 420 (internal quotation marks and citation omitted). A defendant claiming prejudice due to a speedy trial violation must demonstrate "a nexus between the undue delay and the prejudice claimed." *Dorais*, 2016-NMCA-049, ¶ 23 (internal quotation marks and citation omitted).

**{22}** Here, Defendant's sole argument as to prejudice is that, as a result of the delay in adjudicating the 2015 case, he was unable to locate Mike Cook, a witness who Defendant contends would have been able to corroborate Defendant's reasons for being at the scene of, but not involved in the burglary on December 18, 2014. Defendant claims that without Mr. Cook's testimony, Defendant's presence at the scene of the burglary "became more suspicious, and less likely in the jury's minds to be merely coincidental." But Defendant makes no claim that Mr. Cook's testimony bore upon any count for which Defendant was convicted. Indeed, Defendant was acquitted of both counts of commercial burglary without Mr. Cook's testimony. "If the defendant asserts that the delay caused the unavailability of a witness and impaired the defense, the defendant must state with particularity what exculpatory testimony would have been offered, and the defendant must also present evidence that the delay caused the witness's unavailability." *Garza*, 2009-NMSC-038, ¶ 36 (alterations, internal quotation marks, and citation omitted). Defendant has failed to demonstrate either. We conclude

---

State caused delay by requesting a continuance to conduct DNA testing of evidence and making plea offers. Defendant's argument in this regard does not set forth any specific attack on the district court's findings in its order denying Defendant's fourth motion to dismiss on speedy trial grounds, and, therefore, we consider those findings to be conclusive. *See* Rule 12-318(A)(4) NMRA (stating that the appellant's argument "shall set forth a specific attack on any finding, or the finding shall be deemed conclusive"); *see also State v. Steinmetz*, 2014-NMCA-070, ¶ 26, 327 P.3d 1145 (stating that where the district court finds that a period of delay weighs against the defendant, such finding is conclusive when it remains unchallenged on appeal).

that Defendant has not made a particularized showing of prejudice and hold that the district court did not err in denying his motion to dismiss on speedy trial grounds.

## B.    Speedy Sentencing

**{23}**    Defendant argues as well that the State's pursuit of an enhanced sentence in the 2015 case caused an impermissible delay in his sentencing. "The New Mexico appellate courts have on several occasions analyzed cases where defendants have faced delays in the imposition of a sentence or in the enforcement of a sentence[,]" although our appellate courts have never explicitly recognized a right to speedy sentencing. *State v. Lopez*, 2018-NMCA-002, ¶ 10, 410 P.3d 226; *see also State v. Todisco*, 2000-NMCA-064, ¶ 18, 129 N.M. 310, 6 P.3d 1032 (assuming, without deciding that the right to speedy sentencing applies to sentencing proceedings).

**{24}**    The most recent case in which our appellate courts addressed an asserted right to speedy sentencing was *Lopez*, 2018-NMCA-002, ¶¶ 10-16. There, we weighed conflicting methods of addressing speedy sentencing claims, concluding that the analysis set forth in *United States v. Lovasco*, 431 U.S. 783 (1977), provided the most useful framework for analyzing such claims. *Lopez*, 2018-NMCA-002, ¶¶ 10-13. "Under [*Lovasco*], the question of whether a delay in sentencing violates a defendant's due process rights would be answered by looking to: (1) the reasons for the delay; and (2) what prejudice the defendant has suffered as a result of the delay." *Lopez*, 2018-NMCA-002, ¶ 13 (internal quotation marks and citation omitted). As stated in *Lopez*, the *Lovasco* framework requires us to determine only "whether the action complained of violates those fundamental conceptions of justice which lie at the base of civil and political institutions, and which define the community's sense of fair play and decency." *Lopez*, 2018-NMCA-002, ¶ 13 (internal quotation marks and citation omitted). The *Lopez* court further clarified that under *Lovasco*—as under any of the various conflicting methods of analyzing speedy sentencing claims—"the burden uniformly remains on the defendant to prove that the delay in sentencing was prejudicial" for a speedy sentencing claim to be meritorious. *Lopez*, 2018-NMCA-002, ¶ 14.

**{25}**    Here, as in his speedy trial arguments, Defendant has failed to articulate with any specificity that a delay in sentencing was prejudicial. Indeed, the only argument Defendant makes on this issue is that he was prejudiced by being put in the position to challenge an enhanced sentence based on what he contended was an improper use of his 2010 conviction. Defendant's argument in this regard is unavailing and does not prove prejudice in a manner that relates to the timing of his sentencing, and, therefore, we hold that the district court did not err in denying his motion to dismiss on speedy sentencing grounds.

## III.    The District Court Did Not Err in Denying Defendant's Motion to Suppress Evidence in the 2015 Case

**{26}**    Defendant argues the district court erred in denying his motion to suppress evidence discovered in the search of his home in the 2015 case, which Defendant

contends was illegal because the search warrant was unsupported by probable cause. Our review of a trial court's order on a motion to suppress presents "a mixed question of fact and law." *State v. Leyva*, 2011-NMSC-009, ¶ 30, 149 N.M. 435, 250 P.3d 861. "In reviewing a district court's ruling denying a motion to suppress, the appellate courts draw all reasonable inferences in favor of the ruling and defer to the district court's findings of fact as long as they are supported by substantial evidence." *State v. Murry*, 2014-NMCA-021, ¶ 10, 318 P.3d 180. "[W]e then review de novo the [district] court's application of law to the facts to determine whether the search or seizure were reasonable." *Leyva*, 2011-NMSC-009, ¶ 30.

**{27}** Resolution of this issue centers on the question of whether the search warrant issued in the 2015 case was supported by probable cause. In reviewing whether a search warrant was supported by probable cause, the "reviewing court must determine whether the affidavit as a whole, and the reasonable inferences that may be drawn therefrom, provide[d] a substantial basis for determining that there [wa]s probable cause to believe that a search [would] uncover evidence of wrongdoing." *State v. Price*, 2020-NMSC-014, ¶ 12, 470 P.3d 265 (internal quotation marks and citation omitted). "Probable cause exists when there are reasonable grounds to believe an offense has been or is being committed in the place to be searched." *State v. Nyce*, 2006-NMSC-026, ¶ 10, 139 N.M. 647, 137 P.3d 587, *overruled on other grounds by State v. Williamson*, 2009-NMSC-039, 145 N.M. 488, 212 P.3d 376.

**{28}** Here, the affidavit establishes that the affiant officer witnessed an individual who fit Defendant's description flee the scene of the burglary and learned from the owner of the auto shop that two storage shed locks had been cut and were missing. The suspect was described as having blonde or white hair and wearing a black jacket, hat, and jeans. Defendant contends that this description did not match his appearance on the day of the burglary because Defendant was not wearing a black jacket, and argues as well that while the affidavit listed the burglary suspect as having white or blonde hair, Defendant's hair is actually gray. These assertions fail to undermine the affiant officer's sworn statement that he observed the individual fleeing the scene of the burglary, and was able to confirm through a booking photo that the individual was Defendant. Further, the affidavit in support of the application for a search warrant established that the vehicle used to flee the scene of the burglary was registered in Defendant's father's name and that vehicle was found parked in the driveway of the house for which the warrant was issued.

**{29}** Here, the similarity in physical description along with the fleeing vehicle being registered to Defendant's father, as set forth in the affidavit, presented "sufficient facts upon which to conclude that there [was] a reasonable probability that evidence of a crime [would] be found in the place to be searched." *State v, Gonzales*, 2003-NMCA-008, ¶ 12, 133 N.M. 158, 61 P.3d 867; *see also Williamson*, 2009-NMSC-039, ¶ 31 (stating that review of whether an affidavit "provided a substantial basis for the issuing court's determination of probable cause . . . is limited to the four corners of the search

warrant affidavit").[5] We therefore hold that the search warrant was supported by probable cause and the district court, therefore, did not err in denying Defendant's motion to suppress.

## IV. The District Court Did Not Err in Awarding Defendant's Presentence Confinement Credit

**{30}** Defendant argues the district court erred by granting him only twenty-two days of presentence confinement for the time in which he was incarcerated during the pendency of the 2015 case. Defendant contends that he should have been granted additional presentence confinement credit for the time during which he was incarcerated on charges in the unrelated 2013 case. Under NMSA 1978, Section 31-20-12 (1977), "[a] person held in official confinement on suspicion or charges of the commission of a felony shall, upon conviction of that or a lesser included offense, be given credit for the period spent in presentence confinement against any sentence finally imposed *for that offense*." (Emphasis added.) Section 31-20-12 "requires courts to award presentence confinement credit for time spent in official custody before the disposition of charges, as long as the presentence confinement is related to the charge on which the conviction is based." *State v. Barrios*, 1993-NMCA-138, ¶ 5, 116 N.M. 580, 865 P.2d 1224; *see also State v. Laskay*, 1986-NMCA-008, ¶ 7, 103 N.M. 799, 715 P.2d 72 (stating that Section 31-20-12 "does not authorize credit for presentence confinement that is not actually related to the charges of the particular offense" at issue). While we have held that "it is not necessary that the confinement in question relate *exclusively* to the charges against which a defendant seeks credit[,]" they must relate in some way. *Barrios*, 1993-NMCA-138, ¶ 6. (Emphasis added.)

**{31}** Here, Defendant provides no argument or evidence that his confinement in the unrelated 2013 case was sufficiently related to his charges in the 2015 case. We will not make such an argument on his behalf, *State v. Fuentes*, 2010-NMCA-027, ¶ 29, 147 N.M. 761, 228 P.3d 1181, and our own review of the record confirms that Defendant's confinement in the unrelated 2013 case was in no way related to his charges in the 2015 case. We therefore hold that the district court did not err in its award of presentence confinement credit.

## V. We Decline to Review Defendant's Unpreserved Argument Regarding His Cross-Examination by the State

---

5To the extent Defendant argues as well that the information described in the affidavit was stale, alleging that the burglary took place on December 14, 2014, while the search warrant was not issued until December 18, 2014, we note that the record reflects that the burglary occurred on December 18, 2014, the same day the search warrant was issued and Defendant was arrested. Additionally, the affidavit lists "[a] Master Lock belonging to" the business among the items to be seized and Defendant argues that a missing lock is an inherently disposable item without value. Defendant fails, however, to explain with argument or support from authority how or why that assertion, even if true, would invalidate a search warrant and supporting affidavit for such an item. Finding no indication of staleness of information within the record, we decline to further entertain Defendant's argument of staleness.

**{32}** Defendant argues that the district court erred by allowing the State to cross-examine Defendant in a manner contrary to Rules 11-403 and 11-404 NMRA. Specifically, Defendant claims it was improper to question Defendant about whether a pipe found in his home contained methamphetamine, and further contends that the State's questioning in this regard constituted prosecutorial misconduct. Defendant asserts that this argument is preserved, but fails to direct our attention to any portion of the record to support this assertion. Our own review of the record makes clear that defense counsel failed to object or otherwise put the district court on notice of alleged error during the relevant portion of the State's cross-examination of Defendant. We therefore consider this argument to be unpreserved. Because Defendant has not asked us to review this claim of error under any exception to our preservation rules, such as plain or fundamental error, we decline to develop such an argument for him and, therefore, do not reach the merits of his claims of error. *See State v. Montoya*, 2015-NMSC-010, ¶ 45, 345 P.3d 1056 ("In order to preserve an issue for appeal, a defendant must make a timely objection that specifically apprises the trial court of the nature of the claimed error and invokes an intelligent ruling thereon." (internal quotation marks and citation omitted)); *see also* Rule 12-321(A) NMRA ("To preserve an issue for review, it must appear that a ruling or decision by the trial court was fairly invoked."); *State v. Leon*, 2013-NMCA-011, ¶ 33, 292 P.3d 493 ("We generally do not consider issues on appeal that are not preserved below." (internal quotation marks and citation omitted)).

## CONCLUSION

**{33}** For the reasons stated above, we (1) affirm the district court's denial of Defendant's motion to dismiss on speedy trial grounds, its denial of Defendant's motion to suppress, and its determination of Defendant's presentence confinement; (2) reverse the district court's denial of Defendant's Rule 5-803 petition and vacate Defendant's burglary conviction as well as his habitual offender enhancement associated with his 2015 case; and (3) remand with instructions to enter an amended judgment and sentence consistent with this opinion.

**{34}   IT IS SO ORDERED.**

**J. MILES HANISEE, Chief Judge**

**WE CONCUR:**

**ZACHARY A. IVES, Judge**

**GERALD E. BACA, Judge**

**IVES, Judge (concurring, writing separately).**

**{35}** I concur, writing separately only to point out that one of this court's precedents, *Dorais*, 2016-NMCA-049, includes an inaccurate description of the legal standard courts must use to determine whether a defendant's constitutional right to a speedy trial has

been violated. Fortunately, the panel in Defendant's case does not rely on the erroneous standard articulated in *Dorais*, and neither the State nor Defendant relies on *Dorais*. Nevertheless, having encountered the incorrect statement of law in *Dorais* while working on Defendant's appeal, I feel obligated to identify that statement to reduce the risk that courts and counsel will rely on it in the future.

**{36}** The *Dorais* court stated that "[w]here there is no evidence of prejudice caused by the delay," it is not necessary to "assess [the other speedy trial] factors, because the absence of prejudice outweighs other factors that may weigh in a defendant's favor." 2016-NMCA-049, ¶ 22 (internal quotation marks and citation omitted). In other words, under *Dorais*, the absence of particularized prejudice is fatal to a defendant's speedy trial argument, even if all of the other factors weigh heavily in the defendant's favor.

**{37}** But that proposition is directly contrary to *Garza*, in which our Supreme Court held that "generally a defendant must show particularized prejudice," but that, "if the length of delay and the reasons for the delay weigh heavily in [the] defendant's favor and [the] defendant has asserted his right and not acquiesced to the delay, then the defendant need not show prejudice for a court to conclude that the defendant's right has been violated." 2009-NMSC-038, ¶ 39. *Garza* relied heavily on the United States Supreme Court's recognition that " 'affirmative proof of particularized prejudice is not essential to every speedy trial claim.' " 2009-NMSC-038, ¶ 38 (quoting *Doggett v. United States*, 505 U.S. 647, 655 (1992)). Both our Supreme Court and this Court have followed *Garza*. *See, e.g.*, *State v. Samora*, 2016-NMSC-031, ¶ 23, 387 P.3d 230 ("To find a speedy trial violation without a showing of actual prejudice, the Court must find that the three other *Barker* factors weigh heavily against the [s]tate."); *Serros*, 2016-NMSC-008, ¶ 87; *Flores*, 2015-NMCA-081, ¶ 37 ("Because the first three *Barker* factors weigh so heavily in Defendant's favor, we presume undue prejudice and no further showing of prejudice is required."). And my research has not revealed a single opinion that follows *Dorais* rather than *Garza*.

**{38}** Although *Dorais* is an outlier that cannot be reconciled with precedent from our Supreme Court, our appellate courts have not explicitly said as much. I do so here in the hope that counsel and courts will avoid taking the novel path cut by *Dorais*—an apparent shortcut that will lead those who follow it astray.

**ZACHARY A. IVES, Judge**