This decision of the New Mexico Court of Appeals was not selected for publication in the New Mexico Appellate Reports. Refer to Rule 12-405 NMRA for restrictions on the citation of unpublished decisions. Electronic decisions may contain computer-generated errors or other deviations from the official version filed by the Court of Appeals.

## IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO

**No. A-1-CA-40741**

**STATE OF NEW MEXICO,**

      Plaintiff-Appellee,

v.

**CHARLES D.J. BARNES,**

      Defendant-Appellant.

**APPEAL FROM THE DISTRICT COURT OF EDDY COUNTY**
**Jane Shuler Gray, District Court Judge**

Raúl Torrez, Attorney General
Santa Fe, NM
Meryl E. Francolini, Assistant Attorney General
Albuquerque, NM

for Appellee

Bennett J. Baur, Chief Public Defender
Santa Fe, NM
Mark A. Peralta-Silva, Assistant Appellate Defender
Albuquerque, NM

for Appellant

## MEMORANDUM OPINION

**YOHALEM, Judge.**

**{1}** This matter was submitted to this Court on Defendant's brief in chief, pursuant to this Court's order waiving the docketing statement and for a modified briefing schedule, consistent with the Administrative Order for Appeals in Criminal Cases from the Second, Eleventh, and Twelfth Judicial District Courts in *In re Pilot Project for Criminal Appeals*, No. 2022-002, effective November 1, 2022. Following consideration of the brief in chief,

this Court assigned this matter to Track 2 for additional briefing. Now having considered the brief in chief and answer brief, we affirm for the following reasons.

**Speedy Trial**

**{2}**  Defendant appeals his convictions, following a bench trial, for attempted murder, contrary to NMSA 1978, Section 30-2-1 (1994); aggravated burglary, contrary to NMSA 1978, Section 30-16-4(A) (1963); kidnapping, contrary to NMSA 1978, Section 30-4-1(A)(1) (2003); and tampering with evidence, contrary to NMSA 1978, Section 30-22-5 (2003). [BIC 8-9; 1 RP 13, 24] Defendant first argues that the district court violated his right to a speedy trial. "In determining whether a defendant's speedy trial right was violated, [New Mexico] has adopted the United States Supreme Court's balancing test in *Barker v. Wingo*, 407 U.S. 514 . . . (1972)." *State v. Smith*, 2016-NMSC-007, ¶ 58, 367 P.3d 420.

> Under the *Barker* framework, courts weigh "the conduct of both the prosecution and the defendant" under the guidance of four factors: (1) the length of the delay; (2) the reasons for the delay; (3) the timeliness and manner in which the defendant asserted his speedy trial right; and (4) the particular prejudice that the defendant actually suffered.

*Id.* (quoting *State v. Garza*, 2009-NMSC-038, ¶ 13, 146 N.M. 499, 212 P.3d 387). "In analyzing these factors, we defer to the district court's factual findings that are supported by substantial evidence, but we independently review the record to determine whether a defendant was denied [their] speedy trial right." *State v. Flores*, 2015-NMCA-081, ¶ 4, 355 P.3d 81.

**{3}**  As for the first *Barker* factor, so long as the presumptively prejudicial period of delay has passed (twelve months for a simple case, fifteen months for an intermediate case, and eighteen months for a complex case), further inquiry into the *Barker* factors is warranted. *See Garza*, 2009-NMSC-038, ¶ 13. In this case, the delay was thirty-six months, which the parties agree was presumptively prejudicial, warranting additional consideration of the *Barker* factors. [BIC 13; AB 4-5] *See id.* We, however, do not find it necessary to fully analyze each factor to resolve Defendant's speedy trial claim. As this Court recently explained, "[i]n a speedy trial analysis, if any one of the [first] three *Barker* factors does not weigh heavily in favor of a defendant, . . . [the d]efendant must show particularized prejudice in order to prove their [right to] speedy trial was violated." *State v. Wood*, 2022-NMCA-009, ¶ 21, 504 P.3d 579 (proceeding to analyze the prejudice factor after determining that the second factor did not weigh heavily in the defendant's favor and providing, parenthetically, that "a defendant's failure to show particularized prejudice may preclude review of the *Barker* factors"). Defendant here does not contend that any of the first three *Barker* factors weigh heavily in his favor. Nor could he, based on our review of the record and relevant law. In light of this, Defendant must make a showing of particularized prejudice to prevail on his speedy trial claim. *See id.*

**{4}** "We analyze prejudice to a defendant in a speedy trial case in light of three defense interests: (i) to prevent oppressive pretrial incarceration; (ii) to minimize anxiety and concern of the accused; and (iii) to limit the possibility that the defense will be impaired." *State v. Smith*, 2016-NMSC-007, ¶ 60, 367 P.3d 420 (internal quotation marks and citation omitted). "As to the first two types of prejudice, some degree of oppression and anxiety is inherent for every defendant who is jailed while awaiting trial. Therefore, we weigh this factor in the defendant's favor only where the pretrial incarceration or the anxiety suffered is undue." *Garza*, 2009-NMSC-038, ¶ 35 (alterations, internal quotation marks, and citations omitted). "Defendant bears the burden of demonstrating and substantiating prejudice." *State v. Parrish*, 2011-NMCA-033, ¶ 32, 149 N.M. 506, 252 P.3d 730.

**{5}** In this case, Defendant does not claim that his defense was impaired as a result of the delay. [BIC 19-20] Accordingly, we confine our analysis to the first two types of prejudice. Defendant makes a generalized argument that he was prejudiced by being incarcerated while he was awaiting trial, specifically pointing to the anxiety and concern that is accompanied with time in jail. [BIC 20] However, Defendant has not provided any details of his incarceration or anxiety that would show what he suffered was "undue" and therefore has not made a particularized showing of prejudice. *See Garza*, 2009-NMSC-038, ¶ 40. As such, this factor does not weigh in Defendant's favor. *See State v. Gallegos*, 2016-NMCA-076, ¶ 31, 387 P.3d 296 (explaining that "although [the d]efendant's failure to show particularized prejudice is not dispositive to his claim of a speedy trial right violation, the prejudice factor of the speedy trial analysis does not weigh in [the d]efendant's favor"); *Garza*, 2009-NMSC-038, ¶ 37 (stating that "some non[]particularized prejudice is not the type of prejudice against which the speedy trial right protects" (alteration and internal quotation marks omitted)).

**{6}** In sum, Defendant has failed to make a particularized showing of prejudice and, accordingly, his right to a speedy trial was not violated.

**Confrontation Clause**

**{7}** Defendant argues that the district court violated his right to present a defense when it did not allow him to cross-examine the victim, who testified briefly before being excused by the district court because she was emotionally distraught. [BIC 20] Due process claims and claimed violations of the Confrontation Clause are generally reviewed de novo. *State v. Lopez*, 2011-NMSC-035, ¶ 10, 150 N.M. 179, 258 P.3d 458. "Under the Sixth Amendment, every criminal defendant shall enjoy the right to be confronted with the witnesses against him." *State v. Tollardo*, 2012-NMSC-008, ¶ 15, 275 P.3d 110 (omission, internal quotation marks, and citation omitted). "The Confrontation Clause applies to witnesses against the accused—in other words, those who bear testimony. Testimony, in turn, is typically a solemn declaration or affirmation made for the purpose of establishing or proving some fact." *Id.* (alteration, internal quotation marks, and citation omitted).

**{8}** Here, the victim was called to testify. She testified that she knew Defendant and when asked how she knew him stated, "I don't even know what to say to that. He's the one who ruin[ed] my fucking life. I can't do this. I plead the Fifth." [BIC 21] Shortly after taking the stand, she became "extremely upset and unable to testify." [BIC 20] Given her emotional state and inability to testify, the district court excused her from testifying [BIC 20], and "concluded she was unavailable." [AB 17] In addition, the district court struck the testimony that the victim had provided up to that point. [BIC 21; AB 17] A portion of the victim's statement to police was later admitted into evidence by Defendant. [BIC 21]

**{9}** Defendant asserts that "as the State's main witness and the victim of the incident, he had a right to confront her in an attempt to establish his innocence." [BIC 21] However, considering that the victim's extreme emotional state prevented her from testifying, which ultimately led the district court to conclude she was unavailable and to strike her limited testimony, we do not believe that Defendant had a right to cross-examine her. *See id.* (explaining that the Confrontation Clause "applies to witnesses against the accused—in other words, those who bear testimony"); *see also* Rule 11-804 NMRA (providing that a witness is unavailable if that person "cannot be present to testify at the trial or hearing because of . . . a then-existing infirmity, physical illness, or mental illness"). Moreover, Defendant has not demonstrated what he would have asked the victim or how her responses could have contested the evidence already admitted. As such, Defendant has not established how he was prejudiced when he was not allowed to cross-examine the victim. *See State v. Worley*, 1984-NMSC-013, ¶ 21, 100 N.M. 720, 676 P.2d 247 (explaining that for there to be reversible error, a "[v]iolation of the right to confront witnesses must work some prejudice to the defendant"); *id.* ("Where an unconfronted witness does not form a vitally important part of the [s]tate's case, no prejudicial error is shown.").

**{10}** Defendant also argues that the district court violated his right to present a defense because it did not subpoena a witness on his behalf. [BIC 22] According to the State's answer brief, at the hearing on Defendant's motion to represent himself, Defendant "assured the district court he could familiarize himself with and follow the rules of procedure." [AB 20] Rule 5-511(A)(3) NMRA provides that "[t]he clerk shall issue a subpoena, signed but otherwise in blank, to a party requesting it, who shall complete it before service." When asked by the district court if he understood his burden to subpoena any witnesses, Defendant responded, "I'm responsible for subpoenaing my witnesses that I would like to call" and "if I do not subpoena my witnesses, I will not be able to present my case." [AB 20] Defendant, however, failed to request that any witnesses be subpoenaed. [AB 20] Accordingly, we conclude that Defendant has not established that the district court erred by not subpoenaing Defendant's witnesses on his behalf. *See State v. Cain*, 2019-NMCA-059, ¶ 17, 450 P.2d 452 (concluding that there was no error by the district court where the defendant, who was acting pro se, failed to subpoena his witnesses after the district court informed him that it was his responsibility to do so).

**Habitual Offender Sentencing Enhancement**

**{11}** Defendant argues that the district court abused its discretion because it misunderstood its ability to sentence him to concurrent sentences rather than consecutive sentences. [BIC 23] "An abuse of discretion occurs when the ruling is clearly against the logic and effect of the facts and circumstances of the case. We cannot say the trial court abused its discretion by its ruling unless we can characterize [the ruling] as clearly untenable or not justified by reason." *State v. Rojo*, 1999-NMSC-001, ¶ 41, 126 N.M. 438, 971 P.2d 829 (internal quotation marks and citations omitted).

**{12}** Defendant relies on a statement made by the district court before sentencing that because he had three priors, and if they were subject to the habitual offender statute, then each one of his counts would be subject to an eight-year enhancement. [BIC 23] *See* NMSA 1978, § 31-18-17(C) (2003) (providing that any person convicted of a noncapital felony and "who has incurred three or more prior felony convictions . . . is a habitual offender and his basic sentence shall be increased by eight years"). The district court then stated that "[e]ach one of them would be consecutive if the underlying crime was consecutive to other counts." [BIC 23] Defendant argues that this statement shows the district court thought it must impose all four habitual offender sentence enhancements consecutively. [BIC 23] In support of this proposition, Defendant cites *State v. Triggs*, 2012-NMCA-068, ¶¶ 13-23, 281 P.3d 1256, where this Court held that in the absence of a provision in the plea agreement stating that habitual offender enhancements for multiple offenses must be run consecutively, the district court retains discretion to run any or all of the enhancements concurrently.

**{13}** We understand *Triggs* to be distinguishable. There, the district court erroneously believed that, as a matter of law, it lacked discretion to order the habitual offender enhancements to be served concurrently, and this Court reversed the sentencing order and remanded for the district court to exercise its discretion. *Id.* ¶ 23. Conversely, in the present case, nothing in the record shows that the district court believed it lacked discretion to run Defendant's habitual offender enhancements concurrently. In fact, the district court explained that it could sentence Defendant to twenty-six to seventy-one years, and that the "sole purpose" for its sentence was to "prevent Defendant from harming someone else in the future." [BIC 23-24; AB 23-24] Moreover, in its corrected judgment and sentence, the district court ran the sentence for tampering with evidence concurrent to the enhanced, consecutive sentences for Defendant's other three convictions. [BIC 23; AB 24; 2 RP 472] Accordingly, we conclude that the district court did not abuse its discretion by running Defendant's habitual offender enhancements consecutively.

**Due Process**

**{14}** Defendant argues that the district court violated his right to due process because after he was allowed to represent himself, the district court sent documents to his former counsel. [BIC 24] Defendant has not provided any other facts or citations to authority to demonstrate how his right to due process was violated or how he was prejudiced. As such, we conclude that Defendant has not established reversible error on this issue. *See State v. Marquez*, 1998-NMCA-010, ¶ 20, 124 N.M. 409, 951 P.2d 1070 ("The

mere assertion of prejudice, without more, is insufficient to establish prejudicial error warranting reversal of a conviction." (internal quotation marks and citation omitted)); *In re Ernesto M., Jr.*, 1996-NMCA-039, ¶ 10, 121 N.M. 562, 915 P.2d 318 ("An assertion of prejudice is not a showing of prejudice.").

**{15}** Defendant also maintains that he "was not provided with certain evidence" including gunshot residue test results, x-rays of the victim's head, and fingerprint testing on the recovered gun. [BIC 24-25] However, the State explained that no gunshot residue test results were ever created and that there were no fingerprints found on the gun that could be identified. [AB 26] As to the x-rays, Defendant was informed that the State did not have them in its possession nor did the State plan on presenting them at trial. [AB 26] The district court also explained to Defendant that he had the power to subpoena the x-rays himself; however, Defendant failed to do so. [AB 26] Finally, we note that Defendant has not explained how this evidence would have been material to his case, and therefore has not shown how he was prejudiced or how his due process rights were violated when it was not provided to him. *See Marquez*, 1998-NMCA-010, ¶ 20; *In re Ernesto M., Jr.*, 1996-NMCA-039, ¶ 10.

**{16}** For the foregoing reasons, we affirm Defendant's convictions.

**{17} IT IS SO ORDERED.**

**JANE B. YOHALEM, Judge**

**WE CONCUR:**

**JENNIFER L. ATTREP, Chief Judge**

**MEGAN P. DUFFY, Judge**