The slip opinion is the first version of an opinion released by the Chief Clerk of the Supreme Court. Once an opinion is selected for publication by the Court, it is assigned a vendor-neutral citation by the Chief Clerk for compliance with Rule 23-112 NMRA, authenticated and formally published. The slip opinion may contain deviations from the formal authenticated opinion.

# IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO

Opinion Number: _____

Filing Date: June 30, 2023

**No. A-1-CA-39367**

**STATE OF NEW MEXICO,**

Plaintiff-Appellee,

v.

**JODIE JOHNSON, JR.,**

Defendant-Appellant.

**APPEAL FROM THE DISTRICT COURT OF BERNALILLO COUNTY**
**Daniel Gallegos, District Court Judge**

Raúl Torrez, Attorney General
Benjamin Lammons, Assistant Attorney General
Santa Fe, NM

for Appellee

Bennett J. Baur, Chief Public Defender
Carrie Cochran, Assistant Appellate Defender
Santa Fe, NM

for Appellant

**OPINION**

**YOHALEM, Judge.**

{1}     Following a jury trial, Defendant Jodie Johnson, Jr. appeals his convictions of four counts of battery against a household member, contrary to NMSA 1978, Section 30-3-15 (2008); and one count of false imprisonment, contrary to NMSA 1978, Section 30-4-3 (1963), perpetrated against Defendant's then-wife (Victim). Defendant contends that the district court erred when it admitted evidence of uncharged bad acts under Rule 11-404(B) NMRA and Rule 11-403 NMRA. The evidence admitted involved prior acts of domestic violence by Defendant against Victim and forced prostitution of Victim by Defendant before and during their marriage. Defendant argues that this evidence is propensity evidence that should have been excluded by the district court under Rule 11-404(B) and, even if admissible under Rule 11-404(B)(2), the district court abused its discretion by failing to exclude it under Rule 11-403 because its probative value is substantially outweighed by unfair prejudice. We conclude that the district court did not abuse its discretion in admitting this evidence. Defendant also appeals his sentence. Concluding that the district court did not err either in enhancing Defendant's sentence based on his three prior California convictions or in imposing consecutive, rather than concurrent sentences, we affirm.

## BACKGROUND

{2}     The charges in this case arose out of an incident that occurred on March 28, 2018, in a motel room in Albuquerque, New Mexico. Victim testified that Defendant accused her of having a sexual encounter with an unidentified man while she was using the restroom at an Albuquerque pharmacy. Defendant became suspicious when a man happened to walk out of the outside door leading to both the men's and women's restrooms just before Victim emerged.

{3}     Victim testified that Defendant induced Victim to return with him to their motel room. When they entered the motel room, Defendant locked, chained, and barricaded the door with a table, turned up the volume on the television, and then sat on a chair placed in front of the barricaded door. Defendant ordered Victim to take off her clothes (which Victim did), wrapped the cord of a phone charger around his hand, and interrogated Victim to get her to admit that she had sex with the man at the pharmacy. When Victim denied Defendant's accusation, Defendant whipped her naked back and face with the phone charger cord; and then began punching her in the head and choking her until she nearly passed out. When Defendant paused and allowed Victim to breathe, he questioned Victim again about what happened in the pharmacy bathroom, and when Victim denied that anything had happened, Defendant insisted that she was lying and resumed hitting and choking her, and threatening to kill her and her unborn baby (Victim was seven months pregnant).

2

When Victim put her hands in front of her face to ward off Defendant's blows, Defendant tied her hands behind her back with a string bag. Defendant continued questioning Victim between blows, trying to get her to admit that she had sex with the man at the pharmacy.

{4}     Victim testified that she believed she was going to die if she did not agree with Defendant. When she falsely admitted Defendant was right, the beating stopped. Defendant asked Victim if she had been paid by the man. She denied having received any money. He then put his fingers in her vagina and smelled them, allegedly to see if she was telling the truth. He then had intercourse with her and made her perform fellatio. Victim testified she did not consent to any of the sexual acts but was too afraid to tell Defendant no. Defendant then forced her to shower and dress and sent her into the street to prostitute herself.

{5}     The night of this incident, Victim made a plan to leave Defendant the next day. Victim hoped to take a bus to her home in California. When she got to the bus station and asked the fare, she realized she did not have enough money. A bus station employee gave Victim a telephone number for a domestic violence shelter, where Victim stayed for the next few days. Later that day, Victim went to a hospital for treatment of her injuries and, on the fourth day after the incident, she filed a police report. The evidence introduced at trial included photographs of Victim's injuries

taken at the hospital and additional photographs taken during an examination by a sexual assault nurse examiner (SANE) after she reported the incident to police.

{6}     Defendant objected prior to trial to the admission of Victim's testimony that from the beginning of her relationship with Defendant, throughout their marriage, and while she was pregnant, he forced her to prostitute herself and turn over her earnings to him. Defendant also objected to Victim's testimony about an incident of domestic violence by Defendant against Victim in California, and two prior incidents in New Mexico. Victim intended to testify that those incidents were precipitated, like the current incident, by Defendant's suspicion that Victim may have had a sexual encounter with another man, which had not been authorized by Defendant for purposes of prostitution.

{7}     The day before trial, the district court held a hearing to determine the admissibility of this evidence pursuant to Rule 11-404(B) and Rule 11-403. The State emphasized the necessity of the evidence to provide context, claiming that the events described by Victim would not be understood by the jury without background on the nature of the couple's relationship and the degree of control Defendant exercised over Victim. The State argued as well that the evidence was relevant to prove motive; to prove intent as to kidnapping and aggravated battery charges; and to prove lack of consent to sexual acts with Defendant as to the criminal sexual penetration charges.

4

**{8}** The defense argued that the evidence of incidents of domestic violence against Victim in the past was "pure propensity evidence," being introduced solely to show that Defendant had acted consistently with his character. Even if the evidence was admissible under Rule 11-404(B)(2), Defendant argued its probative value was outweighed by the danger of unfair prejudice and should be excluded under Rule 11-403. Defense counsel did not reveal to the State and the court any information about Defendant's planned defense during the motion hearing.

**{9}** The district court denied the defense's motion in limine, concluding that the evidence was admissible to establish the context and to show Defendant's motive and intent, as argued by the State, and to allow the jury to determine whether Victim had consented to the sexual acts charged. The court noted that an understanding of Defendant's and Victim's relationship was necessary so that the jury could understand "'why' this may have occurred."

**{10}** The next day at the start of the trial the defense outlined its arguments in its opening statement. The defense appealed to the jury as "the voice of reason and common sense," arguing that Victim's story "do[es] not add up." Defense counsel denied outright that any of the events of March 28, 2018, occurred, telling the jury that "[Defendant] has never abused his wife . . . in any way." The defense then focused on Victim, arguing that Victim had "several motives to lie," the most important being her desire to go home to California. Relying on Victim's anticipated

testimony about having no money for bus fare to California, defense counsel argued that Victim had decided she wanted to leave Defendant and made up a story about domestic violence so she could get the domestic violence shelter to pay for her bus fare to California. The defense told the jury that they would hear about Victim's history of substance abuse, mental illness, and her prior work as a prostitute while a juvenile, and suggested that this evidence showed that it was Victim's choice to prostitute herself during her marriage to Defendant. Finally, the defense emphasized the he-said, she-said nature of Victim's allegations, and pointed out that Victim waited four days to report to the police. Counsel concluded by again stating that Defendant had done nothing and all he could say was, "I did not do this."

{11} In a conference with the district court following opening arguments, Defendant again asked the court to keep the State from eliciting evidence of a pattern of prostitution of Victim by Defendant, arguing that it is "extremely prejudicial to [Defendant to]" raise prostitution. The State argued that, based on Defendant's opening statement, Victim's prostitution was relevant to the defense as well as to the State's case, and having raised it, Defendant could not keep it out.

{12} The district court reiterated its Rule 11-404(B) ruling from the day before, reaffirming that the court would allow the admission of evidence of a pattern of prostitution of Victim, controlled by Defendant, and evidence of specific acts in the past where Defendant exercised that control through physical violence and sexual

abuse of Victim motivated by her contact with a man, which was not controlled by Defendant. The district court also allowed the State to admit text messages that corroborated Victim's testimony about Defendant's role in her prostitution and showed him directing Victim to certain locations, approving the amounts Victim charged, and collecting the money Victim earned. The district court agreed there was some prejudice but found that it did not substantially outweigh the probative value of the evidence. The district court directed the State to avoid presenting too much detail about prior incidents, to avoid any reference to the term "human trafficking," and excluded from evidence any texts related to soliciting other women to work as prostitutes for Defendant, finding these matters more prejudicial than probative.

{13}    The trial then continued the next morning with Victim's testimony. Victim testified about the history of her relationship with Defendant, including giving her account of how Defendant, who is twenty years older than Victim, forced and manipulated her into working as a prostitute, and giving accounts of three prior incidents of physical and sexual abuse by Defendant, all motivated by Defendant's suspicion that Victim was in contact with another man without Defendant controlling and profiting from the interaction. The text messages between Victim and Defendant prior to March 28, 2018, were admitted through Victim's testimony and showed Defendant managing Victim's work as a prostitute. The trial included

7

the testimony of a SANE examiner about Victim's injuries, and photographs of Victim's injuries. Defendant did not testify.

{14} The defense cross-examined Victim about her drug use and prostitution as a juvenile, about the State paying for her hotel and food in New Mexico during trial, and about her testimony that she did not tell Defendant she did not want to have intercourse. In closing argument, the defense argued that Victim chose to prostitute herself for money as she had done before as a juvenile, repeated its claim in opening argument that Victim lied about the attack by Defendant in order to get bus fare to California and hotel money from the State, and suggested that it was illogical to believe Defendant would let Victim engage in prostitution if it was true that he was so jealous about any contact she had with other men. Defendant also attacked Victim's claim that she had not consented to sex, pointing out that she admitted she never said, "No," and therefore did not communicate her refusal to Defendant.

{15} The jury was instructed on one count of kidnapping, NMSA 1978, § 30-4-1 (2003), and the lesser included offense of false imprisonment, § 30-4-3; three counts of criminal sexual penetration, NMSA 1978, § 30-9-11 (A), (F) (2009); three counts of aggravated battery against a household member (great bodily harm), NMSA 1978, § 30-3-16(C)(1) (2018); and four counts of battery against a household member, § 30-3-15. Defendant was convicted of one count of false imprisonment and four counts of battery against a household member. He was acquitted of the three charged

8

counts of criminal sexual penetration, one count of kidnapping, and of four counts of aggravated battery.

{16}     Additional facts relevant to the sentencing issues will be included in our analysis of those issues.

**DISCUSSION**

**I.      The District Court Did Not Abuse Its Discretion in Admitting Evidence of Defendant's Prostitution of Victim and Prior Violence and Sexual Abuse Against Victim in Service of That Prostitution**

{17}     We begin our discussion by addressing Defendant's claim that the district court abused its discretion in admitting the evidence of Defendant's role in Victim's prostitution during their marriage, and in admitting three prior incidents of physical violence and sexual abuse committed by Defendant for the purpose of controlling or punishing Victim's unauthorized contact with other men. Defendant argues on appeal that this evidence was solely relevant to Defendant's propensity to commit the crimes charged, and, therefore, should have been excluded under Rule 11-404(B), or, if admissible under Rule 11-404(B), its probative value was substantially outweighed by the danger of unfair prejudice, and should have been excluded under Rule 11-403. We agree with the district court that this evidence was relevant to explain Defendant's motive and to rebut Defendant's contention that he had never abused Victim in any way. We see no abuse of discretion in the district court's conclusion that this evidence was probative on contested issues the jury was required

9

to consider in reaching its verdict and, that its probative value was not substantially outweighed by the danger of unfair prejudice. We explain.

{18}   We review the decision of a trial court to admit evidence under Rule 11-404(B) and Rule 11-403 for abuse of discretion. *State v. Otto*, 2007-NMSC-012, ¶¶ 9, 11, 141 N.M. 443, 157 P.3d 8. An abuse of discretion occurs when the district court's ruling is "clearly against the logic and effect of the facts and circumstances of the case." *State v. Woodward*, 1995-NMSC-074, ¶ 6, 121 N.M. 1, 908 P.2d 231 (internal quotation marks and citation omitted), *abrogated on other grounds as recognized by State v. Montoya*, 2014-NMSC-032, 333 P.3d 935. "We cannot say the trial court abused its discretion by its ruling unless we can characterize [the ruling] as clearly untenable or not justified by reason." *State v. Rojo*, 1999-NMSC-001, ¶ 41, 126 N.M. 438, 971 P.2d 829 (internal quotation marks and citation omitted).

{19}   Under Rule 11-404(B)(1), "[e]vidence of a crime, wrong, or other act is not admissible to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character." Rule 11-404(B)(2), however, authorizes the admission of evidence of prior acts if it is relevant "for another purpose, such as proving motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident." "This list is not exhaustive and evidence of other wrongs may be admissible on alternative relevant

bases so long as it is not admitted to prove conformity with character." *Otto*, 2007-NMSC-012, ¶ 10 (internal quotation marks and citation omitted). Importantly, "Rule 11-404(B) is a rule of inclusion, not exclusion, providing for the admission of all evidence of other acts that are relevant to an issue in trial, other than the general propensity to commit the crime charged." *State v. Bailey*, 2017-NMSC-001, ¶ 14, 386 P.3d 1007 (alteration, internal quotation marks, and citation omitted).

{20} "If the evidence is probative of something other than propensity, then we balance the prejudicial effect of the evidence against its probative value to determine if the probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues or misleading the jury," as provided by Rule 11-403. *State v. Ruiz*, 2001-NMCA-097, ¶ 15, 131 N.M. 241, 34 P.3d 630 (internal quotation marks and citation omitted). "The purpose of Rule 11-403 is not to guard against any prejudice whatsoever, but only against the danger of *unfair* prejudice." *Otto*, 2007-NMSC-012, ¶ 16 (alteration, internal quotation marks, and citation omitted). Thus, when "the tendered evidence serves a legitimate purpose other than character or propensity . . . that legitimate purpose should be balanced against the jury's tendency to use the evidence illegitimately." *State v. Ruiz*, 1995-NMCA-007, ¶ 12, 119 N.M. 515, 892 P.2d 962.

{21} We must first determine whether the evidence of a pattern of prostitution of Victim by Defendant, including prior incidents of physical and sexual violence

perpetrated against Victim, is probative of a contested material issue other than Defendant's character or propensity to commit the crimes charged. If we agree with the district court that the evidence is probative of a contested material issue, we must then determine whether the district court's conclusion that the probative value of the evidence was not substantially outweighed by the risk that its admission would be unfairly prejudicial was a proper exercise of the court's discretion. We agree with the district court's conclusion that Defendant's motive was a contested material issue at trial, and conclude that the district court did not abuse its discretion when it found that the probative value of this evidence was not substantially outweighed by the danger that its admission would be unfairly prejudicial to Defendant.

**A.     Relevance of the Evidence to a Material Issue in Dispute Other Than Propensity, Under Rule 11-404(B)(2)**

{22}     The evidence of Defendant's forcing Victim into prostitution during their marriage and controlling her prostitution was relevant to provide a motive for what defense counsel argued to the jury in his opening argument was inexplicable and unbelievable behavior that the jury should exercise their common sense to find never happened. Defense counsel in his opening statement argued to the jury that Defendant had "*never* abused his wife . . . *in any way*," suggesting that the jury should view the charges against Defendant in the context of a loving marital relationship, where a husband would have no motive to imprison and attack his wife. Defendant further put motive in issue by pairing his argument that he had no motive

12

to attack his wife and had never done so in the past with an argument that it was Victim who had a motive to make up a story and falsely report that he had battered her to get money for a bus ticket to California. Because Defendant denied outright that anything had happened on March 28, 2018, whether Defendant had a motive to engage in the alleged conduct was an important, contested issue, as was the nature of the marital relationship, which Defendant argued had never included any sort of abuse. *See State v. Hnulik*, 2018-NMCA-026, ¶ 29, 458 P.3d 475 (providing that, where the defendant denied outright that he had killed his wife, evidence of a prior dispute between the defendant and his wife was properly admitted under Rule 11-404(B)(2) to show that the defendant had a motive to kill his wife and "to rebut [the d]efendant's efforts to portray his relationship with [his wife] as a loving one").

**B.     The Probative Value of the Evidence Admitted Was Not Substantially Outweighed By Unfair Prejudice Under Rule 11-403**

{23}     After concluding that the evidence of Defendant's prostitution of Victim and Defendant's prior physical and sexual violence against Victim was admissible under Rule 11-404(B) to prove Defendant's motive,[1] the district court considered Defendant's claim that, even if relevant to prove contested elements of the crimes

---

[1]We need not decide whether the prior bad acts evidence is admissible under Rule 11-404(B)(2) to provide "context" for the charged incident or to prove Defendant's intent to commit kidnapping or sexual penetration because we have found it admissible to show Defendant's motive, an item specifically listed in Rule 11-404(B)(2) as a permissible use for prior bad act evidence.

charged and to rebut Defendant's claim that he and Victim had a loving relationship, the evidence should be excluded because it is more prejudicial than probative. The district court concluded that the evidence had strong probative value that was not substantially outweighed by unfair prejudice to Defendant. Defendant has not persuaded us that the district court abused its discretion.

{24} Although the evidence of Defendant's role in Victim's prostitution and the commission by Defendant of offenses against Victim in the past that were motivated by his desire to control and profit from Victim's prostitution is prejudicial—as Rule 11-403 recognizes, there is always a danger that the jury will rely on other-acts evidence as evidence of propensity—its probative value is high. Defendant, in his opening statement and then in cross-examination of Victim, suggested that their marriage was a loving relationship where he had never abused his wife. Rebutting this defense required giving the jury an understanding of the actual relationship between Defendant and Victim, and of what might motivate Defendant to engage in conduct that would be inexplicable in most marriages. The contested issues for trial here are much like the issues this Court identified in *Hnulik*. In *Hnulik*, this Court held that the district court did not abuse its discretion in admitting evidence of prior incidents between the defendant husband and his wife, allegedly the victim of a murder, to both rebut the husband's claim that he had a loving relationship with his wife and to provide a motive for a murder that the defendant vehemently denied, and

14

which was otherwise inexplicable. 2018-NMCA-026, ¶ 29. This Court found in *Hnulik* that, under these circumstances, the district court had not abused its discretion in admitting prior acts of abuse by the husband. *Id.* ¶ 31.

{25} As in *Hnulik*, Defendant in this case has not convinced us that the district court abused its discretion in admitting this other-acts evidence. The district court carefully considered the facts and the law, reasonably concluding that the probative value of the evidence relating to the nature of Defendant's and Victim's relationship and Defendant's motive in exercising control over Victim was not outweighed by unfair prejudice. The district court's conclusion is supported by logic and reason. *See N.M. Regul. & Licensing Dep't v. Lujan*, 1999-NMCA-059, ¶ 8, 127 N.M. 233, 979 P.2d 744 (providing that even if there is room for two opinions, if the district court's decision is reasonable, we will not find an abuse of discretion). We, therefore, affirm the district court's admission of the other-acts evidence at issue here.

**II.    Defendant Has Not Demonstrated That the District Court Erred by Sentencing Him as a Habitual Offender**

{26} Defendant was convicted of four counts of battery against a household member, a misdemeanor, and one count of false imprisonment, a felony. The district court sentenced Defendant consecutively for each conviction and enhanced Defendant's sentence for false imprisonment, the only felony conviction, by eight years under the New Mexico habitual offender statute, NMSA 1978, Section 31-18-17(B) (2003). Defendant argues that two of the three California convictions the

district court relied on to enhance his sentence—his 2006 conviction and his 2011 conviction—failed to meet the definition of a "prior felony conviction" for purposes of our habitual offender statute. Claiming fundamental error, Defendant also argues that the district court improperly relied on uncharged conduct in sentencing him, in violation of his right to due process. We address each of his arguments in turn.

**A.      Substantial Evidence Supported the District Court's Finding That Defendant's Sentence for His 2006 Conviction Was Completed Within Ten Years of His Conviction in This Case**

{27}      Defendant argues that his 2006 conviction in Santa Clara County, California, Superior Court did not qualify as a "prior felony conviction" for purposes of the New Mexico habitual offender statute because the State failed to prove that less than ten years had passed since Defendant completed serving his sentence for that conviction. The New Mexico habitual offender statute defines a "prior felony conviction" that can be used to enhance a sentence for a subsequent felony offense, in relevant part, as follows:

D.      As used in this section, "prior felony conviction" means:

. . . .

(2) a prior felony, when less than ten years have passed prior to the instant felony conviction since the person completed serving his sentence or period of probation or parole for the prior felony, whichever is later, for which the person was convicted other than an offense triable by court martial if:

(a) the conviction was rendered by a court of another state . . . ;

16

        (b) the offense was punishable, at the time of conviction, by death or a maximum term of imprisonment of more than one year; or

        (c) the offense would have been classified as a felony in this state at the time of conviction.

Section 31-18-17(D).

{28}    The State bears the burden of establishing by a preponderance of the evidence that each element of the definition of a "prior felony conviction" is satisfied. *State v. Elliott*, 2001-NMCA-108, ¶ 35, 131 N.M. 390, 37 P.3d 107. "We review the sufficiency of the evidence presented in habitual offender proceedings under a substantial evidence standard of review." *State v. Bailey*, 2008-NMCA-084, ¶ 23, 144 N.M. 279, 186 P.3d 908. Substantial evidence is defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *State v. Salgado*, 1999-NMSC-008, ¶ 25, 126 N.M. 691, 974 P.2d 66 (internal quotation marks and citation omitted), *overruled on other grounds by State v. Martinez*, 2021-NMSC-002, 478 P.3d 880. This Court views the evidence in the light most favorable to the district court's decision, resolves all conflicts, indulges all permissible inferences to uphold the court's decision, and disregards all evidence and inferences to the contrary. *Id.* We do not reweigh the evidence and will not substitute our judgment for that of the trial court. *In re Ernesto M., Jr.*, 1996-NMCA-039, ¶ 15, 121 N.M. 562, 915 P.2d 318.

17

{29}    The State established the fact of Defendant's 2006 felony conviction and his sentence for that conviction by introducing into evidence at the sentencing hearing a certified copy of an information filed in California, in the Santa Clara County Superior Court, charging Defendant with one count of felony possession of a controlled substance on or about September 14, 2005, contrary to California Health and Safety Code, Cal. Health & Safety Code § 11350(a) (West 2018); and two additional certified documents from the Santa Clara County Superior Court showing that Defendant was convicted of this offense on January 30, 2006, and sentenced on March 1, 2006, to four years of imprisonment, followed by three years of parole. Defendant does not dispute the sufficiency of the State's proof that this offense qualifies as a felony under Section 31-18-17(D)(2) or the length of the sentence imposed. These Santa Clara County Superior Court documents all show the case number assigned by that Court.

{30}    The evidence challenged by Defendant is State's Exhibit 5: a copy of the records of the California Division of Adult Institutions (the Division) certified by the Division's custodian of the records. Defendant alleges that the Division's records do not sufficiently tie his completion of parole on December 2, 2012, to his 2006 felony conviction. Specifically, Defendant objects to the absence of the case number assigned by the Santa Clara County Superior Court on the document listing Defendant's transfers within the prison system by date, and paroles, returns, and

18

release, from his admission on March 14, 2006, until his parole ends on December 2, 2012. Defendant argues that the parole, which ended on December 2, 2012, could have been imposed for some other offense.

**{31}** We have carefully reviewed the evidence. The Division's records tie Defendant's admission to prison on March 14, 2006, to his sentence for his 2006 conviction, identifying both the offense committed and, on the FBI intake form on the day Defendant turned himself in to begin serving his sentence, the Superior Court case number associated with his conviction. The list of Defendant's transfers in the prison system, including his parole and several recommitments and releases, until his parole ended on December 2, 2012, do not identify any intervening case or sentence, and appear, on their face, to describe each step as Defendant served his four-year sentence and three years of parole for the original 2006 conviction. Importantly, Defendant presented no evidence of any other conviction or sentence that he was serving that could have been confused with his sentence for the 2006 felony conviction at issue. *See State v. Simmons*, 2006-NMSC-044, ¶ 13, 140 N.M. 311, 142 P.3d 899 (explaining that "the [s]tate must make its prima facie showing, including all of the required elements for a prior felony conviction as defined by the habitual offender statute, and then the burden of proof shifts to the defendant" to present proof of the invalidity of the state's evidence). Defendant having presented no evidence supporting his claimed invalidity of the State's evidence, we conclude

that substantial unrebutted evidence in the record supports the district court's finding that Defendant completed his parole for his 2006 conviction on December 2, 2012, less than ten years prior to the instant conviction.

**B.      Defendant's 2011 California Conviction Was a "Prior Felony Conviction" Under Our Habitual Offender Statute**

{32}     Defendant next contends that because his 2011 felony conviction was discharged under California Penal Code Section 1203.4(a)(1) (West 2009) upon his completion of court-ordered treatment, it is not a "prior felony conviction" for purposes of our habitual offender statute. Defendant argues that whether the 2011 conviction is a "prior felony conviction" for purposes of our habitual offender statute depends on whether California "intended to permit dismissed crimes to be used for the purposes of New Mexico's habitual offender statute." We do not agree.

{33}     Defendant's argument misstates the relevant New Mexico law: New Mexico applies the terms of our habitual offender statute and the policy adopted by our Legislature in enacting that statute to determine whether a defendant has been convicted of an offense under either our own criminal statutes or those of another state for purposes of our habitual offender statute. *See State v. Edmondson*, 1991-NMCA-069, ¶ 11, 112 N.M. 654, 818 P.2d 855 ("[T]he language of the New Mexico habitual-offender statute does not suggest that when considering a conviction from another state, New Mexico will defer to the other state's determination that the conviction should not be used for habitual-offender purposes."). The other state need

20

not have a habitual offender law and it need not treat the offense at issue as a basis for enhancing a sentence, if it has such a law. *Id.*

{34} The sole question before us, under these principles of New Mexico law, is whether a conviction, which has been discharged under California Penal Code Section 1203.4(a)(1), is a "prior felony conviction" that can be used to enhance Defendant's sentence under our habitual offender statute. A "conviction" under longstanding New Mexico precedent, "refers to the finding of guilt by plea or by verdict." *Benns v. N.M. Dep't of Pub. Safety*, 2022-NMCA-050, ¶ 10, 517 P.3d 273. Our Supreme Court in *Padilla v. State* applied this definition to the term "conviction" in our habitual offender statute. *See* 1977-NMSC-063, ¶ 9, 90 N.M. 664, 568 P.2d 190. Construing New Mexico's deferred sentencing statute, which provides for dismissal of the criminal charges following successful completion of a deferred sentence, our Supreme Court held in *Padilla* that the term "conviction" "refers to *a finding of guilt* and does not include the imposition of a sentence." *Id.* (emphasis added). Concluding that the "conviction"—the finding of guilt—remains even after the criminal charges are dismissed, our Supreme Court affirmed the imposition of a habitual offender enhancement despite the dismissal of the charges. *Id.* ¶ 11.

{35} Although we have not previously addressed a dismissal of a conviction under California Penal Code Section 1203.4(a)(1), we have held that a conviction

21

discharged under a nearly identical Texas statute met the standards for a "conviction" under our habitual offender statute as construed in *Padilla*. *See Edmondson*, 1991-NMCA-069, ¶ 5. Both the Texas statute at issue in *Edmondson*, Tex. Code Crim. Proc. Ann. art. 42.12, § 3d(a) (West 1979, repealed 2017), and the California statute at issue in this case, Cal. Pen. Code § 1203.4(a)(1), allow for probationers to have their convictions set aside and the charges against them dismissed after completion of court-ordered treatment and provide that, with specified exceptions, the defendant "shall thereafter be released from all penalties and disabilities resulting from the offense of which he or she has been convicted." *People v. Vasquez*, 25 P.3d 1090, 1091-92 (Cal. 2001); *see id.* at 1092 (describing as "closely analogous" the provisions of Tex. Code Crim. Proc. Ann. art. 42.12, sect. 3d(a) at issue in *Edmondson*, and California Penal Code Section 1203.4(a)(1), at issue in this case). The California Supreme Court in *Vasquez* conducted an extensive comparison of the California statute at issue in this case and the Texas statute at issue in *Edmondson*, and concluded that both statutes mitigate punishment but do not "affect the fact that [the defendant's] guilt has been finally determined according to law." *Vasquez*, 25 P.3d at 1093 (internal quotation marks and citation omitted). The determination of guilt being the defining factor under our habitual offender statute, *see Padilla*, 1977-NMSC-063, ¶ 9, we rely on our decision in *Edmondson* to conclude that Defendant's conviction qualifies as a "prior felony

22

conviction," despite the discharge granted by the California court under California Penal Code Section 1203.4(a)(1).[2]

### III.    Defendant's Sentence Did Not Constitute Fundamental Error

**{36}**    Lastly, Defendant claims that the district court relied on uncharged conduct in sentencing him in violation of his due process rights under Article II, Section 18 of the New Mexico Constitution. Defendant points specifically to what he alleges is the district court's reliance on the evidence presented at trial that Victim was pregnant and Defendant sent her out on the street to prostitute herself after battering her on the night of March 28, 2018. Defendant admits that this issue was not preserved in the district court and asks that we review his claim under the doctrine of fundamental error.

**{37}**    Defendant's argument consists of a list of dissenting opinions in federal courts in which the dissenting judge or justice objects to the majority's approval of the trial court's reliance on charges on which the jury acquitted the defendant in making a sentencing decision. Defendant offers no argument as to why he believes the

---

[2]We note that we do not find it necessary to rely on our Legislature's 1993 expansion of the term "conviction" in our habitual offender statute to include a "conditional discharge" under NMSA 1978, Section 31-20-13(A) (1993). *See* § 31-18-17(A). A discharge under California Penal Code Section 1203.4(a)(1), unlike a conditional discharge under our Section 30-20-13, is granted *after* an adjudication of guilt and, therefore, fits the definition of a "conviction" in *Edmondson* and *Padilla*. We, therefore, do not address Defendant's argument about whether our conditional discharge statute would apply to a California conditional discharge.

evidence relied on by the district court here—Defendant sending Victim out onto the street after battering her on the night of March 28, 2018—is evidence of an acquitted offense. He does not cite or distinguish *State v. Gardner*, 2003-NMCA-107, ¶ 43, 134 N.M. 294, 76 P.3d 47, a case in which this Court held that a sentencing court does not violate due process or abuse its discretion when the sentencing court relies on evidence presented at trial.

{38}    In a brief on appeal, "it is the appellant's burden to demonstrate, by providing well-supported and clear arguments[] that the district court has erred." *Premier Tr. of Nev., Inc. v. City of Albuquerque*, 2021-NMCA-004, ¶ 10, 482 P.3d 1261. Absent any argument applying the relevant law to the particular facts and circumstances and explaining why the district court erred, we apply our presumption of correctness and affirm. *See State v. Aragon*, 1999-NMCA-060, ¶ 10, 127 N.M. 393, 981 P.2d 1211.

**CONCLUSION**

{39}    For the reasons stated above, we affirm the district court's admission of the prior bad acts evidence and the sentence imposed by the district court.

{40}    **IT IS SO ORDERED.**


_____
**JANE B. YOHALEM, Judge**

24

**WE CONCUR:**

_____
**JENNIFER L. ATTREP, Chief Judge**


_____
**ZACHARY A. IVES, Judge**