This decision of the New Mexico Court of Appeals was not selected for publication in the New Mexico Appellate Reports.  Refer to Rule 12-405 NMRA for restrictions on the citation of unpublished decisions.  Electronic decisions may contain computer-generated errors or other deviations from the official version filed by the Court of Appeals.

## IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO

**No. A-1-CA-42398**

**STATE OF NEW MEXICO,**

      Plaintiff-Appellee,

v.

**DAIFIANCE J. HILLIARD a/k/a
DAIFIANCE HILLIARD a/k/a
DAIFIANCE JAKE HILLIARD,**

      Defendant-Appellant.

**APPEAL FROM THE DISTRICT COURT OF SAN JUAN COUNTY
John Dean, District Court Judge**

Raúl Torrez, Attorney General
Santa Fe, NM

for Appellee

Bennett J. Baur, Chief Public Defender
Brian Parrish, Assistant Appellate Defender
Santa Fe, NM

for Appellant

### MEMORANDUM OPINION

**BACA, Judge.**

**{1}** This matter was submitted to the Court on the brief in chief pursuant to the Administrative Order for Appeals in Criminal Cases from the Second, Eleventh, and Twelfth Judicial District Courts in *In re Pilot Project for Criminal Appeals*, No. 2022-002, effective November 1, 2022. Having considered the brief in chief, concluding the briefing submitted to the Court provides no possibility for reversal, and determining that this

case is appropriate for resolution on Track 1 as defined in that order, we affirm for the following reasons.

## I.    Sufficiency of the Evidence

{2}    Defendant appeals from his conviction, following a jury trial, for aggravated stalking (violation of a protection order), asserting that his conviction was supported by insufficient evidence. [3 RP 550, 561; BIC 1, 7, 9-10] "[A]ppellate courts review sufficiency of the evidence from a highly deferential standpoint." *State v. Slade*, 2014-NMCA-088, ¶ 13, 331 P.3d 930 (omission, internal quotation marks, and citation omitted). "All evidence is viewed in the light most favorable to the state, and we resolve all conflicts and make all permissible inferences in favor of the jury's verdict." *Id.* (alterations, internal quotation marks, and citation omitted). We "do not search for inferences supporting a contrary verdict or re[]weigh the evidence because this type of analysis would substitute an appellate court's judgment for that of the jury." *Id.* (internal quotation marks and citation omitted).

{3}    We look to the jury instructions to determine what the jury was required to find in order to convict Defendant beyond a reasonable doubt. *See State v. Holt*, 2016-NMSC-011, ¶ 20, 368 P.3d 409 ("The jury instructions become the law of the case against which the sufficiency of the evidence is to be measured." (alterations, internal quotation marks, and citation omitted)). In pertinent part, the jury instructions for aggravated stalking required the State to prove beyond a reasonable doubt that Defendant committed the crime of stalking and that at the time of the offense, Defendant knowingly violated a permanent or temporary order of protection. [2 RP 377] The jury was further instructed that in order to determine whether Defendant committed the crime of stalking, it must find that Defendant (1) "knowingly pursued a pattern of conduct by, on more than one occasion, directly or indirectly engaging in" following, threatening, or communicating to the victim (Victim); and (2) "intended to place [Victim] in reasonable apprehension of bodily harm." [2 RP 378]

{4}    According to the brief in chief, Victim testified to the following relevant facts: Defendant violated an order of protection by tailgating and following Victim while she was driving. [BIC 1-2] While stopped at a traffic light waiting to turn left, Victim heard loud music and honking coming from a truck stopped to her right, and she was able to identify Defendant as the driver of the truck. [BIC 2] Victim believed Defendant was upset, and Victim saw Defendant hold his hand in an imitation of a gun. [Id.] Although her car window was closed, it looked as though Defendant was talking to Victim and she heard him say, "Stupid bitch." [Id.] After the light turned green and both vehicles turned, Defendant drove the truck very fast and uncomfortably close to Victim's vehicle. [BIC 2-3] Once parked in a nearby parking lot, Victim called 911, took a photo of the truck, and spoke with a responding law enforcement officer. [BIC 3] Victim eventually met her brother and his wife in a different parking lot, where Victim saw Defendant drive slowly past them in circles while yelling at Victim, including cursing and pointing his finger at her in a threatening manner. [BIC 4]

**{5}** Defendant contends that the evidence was insufficient to prove that he was the driver of the truck. [BIC 7] Defendant asserts that the jury's findings are undermined by other evidence, including Victim's refusal to take a polygraph test, Defendant's polygraph test results, and testimony about the owner of the truck, Thomas Neely. [BIC 10] Defendant maintains that the evidence indicates that Mr. Neely had previously been identified as driving the truck during a prior incident involving Victim, that Mr. Neely did not know Defendant, and that Mr. Neely was in possession of the truck during the relevant time period. [BIC 5-7, 9-10] We do not reweigh the evidence when reviewing its sufficiency on appeal, nor do we make determinations as to credibility or otherwise engage in fact-finding. *See Slade*, 2014-NMCA-088, ¶ 13; *see also State v. Salas*, 1999-NMCA-099, ¶ 13, 127 N.M. 686, 986 P.2d 482 (recognizing that it is for the fact-finder to resolve any conflict in the testimony of the witnesses and to determine where the weight and credibility lie). Further, "[c]ontrary evidence supporting acquittal does not provide a basis for reversal because the jury is free to reject Defendant's version of the facts." *State v. Rojo*, 1999-NMSC-001, ¶ 19, 126 N.M. 438, 971 P.2d 829. Indeed, the ultimate question for us on appeal is whether the trial court's "decision is supported by substantial evidence, not whether the court could have reached a different conclusion." *State v. Ernesto M. (In re Ernesto M., Jr.)*, 1996-NMCA-039, ¶ 15, 121 N.M. 562, 915 P.2d 318. We therefore conclude that the above testimony, which included Victim's identification of Defendant as the driver of the truck during the relevant time periods, was sufficient to support the jury's finding that Defendant was the driver of the truck. We further conclude that Defendant's assertions regarding polygraph testing effectively ask this Court to reweigh the evidence, which we will not do. *See Rojo*, 1999-NMSC-001, ¶ 19 (stating that we will not "invade the jury's province as fact-finder by second-guessing the jury's decision concerning the credibility of witnesses, reweighing the evidence, or substituting [our] judgment for that of the jury" (internal quotation marks and citation omitted)).

**{6}** Defendant further contends that the evidence was insufficient to prove that he committed stalking, which required the jury to find that Defendant "knowingly pursued a *pattern* of conduct . . . on *more than one occasion*." [BIC 10-11, 16] Defendant asserts that the events in question constitute a single continuous incident and the evidence therefore does not support a finding of a pattern of conduct or that the conduct occurred on more than one occasion. [BIC 10-12] We are not persuaded. This Court has held that aggravated stalking can occur where a defendant's single violation of a protection order "is done in a threatening manner, is intended to place the victim in fear, and is a part of an established pattern of stalking behavior." *State v. Smile*, 2009-NMCA-064, ¶ 12, 146 N.M. 525, 212 P.3d 413; *see also id.* ¶ 10 (explaining that "the Legislature imposed a harsher penalty when a stalker violates a [protection] order because a stalker who ignores such an order ostensibly poses a more serious threat to [their] victim," and because, "[h]aving already been warned that his or her conduct is prohibited, an individual who continues to stalk disregards the rule of law and poses a significant threat to the safety of [their] victim"); NMSA 1978, § 30-3A-3.1 (1997) ("Aggravated stalking consists of stalking perpetrated by a person . . . who knowingly violates a permanent or temporary order of protection issued by a court."). We therefore conclude

that the evidence was sufficient to support the jury's finding that Defendant committed the crime of stalking.

## II.   Unanimity of the Jury's Findings as to Theories of Alternative Conduct

{7}   Defendant contends that the jury instructions erroneously permitted the jury to convict without unanimous agreement as to which theory of alternative conduct supported Defendant's conviction because the instruction allowed the jury to find that Defendant committed the crime of stalking if Defendant followed, threatened, *or* communicated to Victim. [BIC 12, 16-17] We are not persuaded. As this Court has previously held, "where alternative theories of guilt are put forth under a single charge, jury unanimity is required only as to the verdict, not to any particular theory of guilt." *State v. Godoy*, 2012-NMCA-084, ¶ 6, 284 P.3d 410; *see also State v. Salazar*, 1997-NMSC-044, ¶ 32, 123 N.M. 778, 945 P.2d 996 (stating that our Supreme Court has held that "a jury's general verdict will not be disturbed . . . where substantial evidence exists in the record supporting at least one of the theories of the crime presented to the jury"). We therefore conclude that the district court did not err when it permitted the jury instructions on aggravated stalking.

## III.   Habitual Offender Enhancement

{8}   Defendant asserts that the district court erred in imposing a habitual offender enhancement to Defendant's sentence. [BIC 17] Defendant does not challenge the sufficiency of the evidence supporting his previous conviction or the proof of his identity therein. *See State v. Johnson*, 2024-NMCA-015, ¶ 28, 541 P.3d 141, *cert. denied* (S-1-SC-40040, Nov. 14, 2023) ("We review the sufficiency of the evidence presented in habitual offender proceedings under a substantial evidence standard of review."); *see also State v. Sedillo*, 2001-NMCA-001, ¶ 5, 130 N.M. 98, 18 P.3d 1051 (stating that "[t]he [s]tate bears the initial burden of establishing a prima facie case of a defendant's previous convictions," and "[t]he defendant is then entitled to bring forth contrary evidence"). Instead, Defendant challenges whether the documentation supporting the State's supplemental information was certified, noting that the record proper does not make clear whether certified documents were ultimately submitted as requested by the district court at sentencing. [BIC 17-19; 3 RP 550]

{9}   Notwithstanding any question as to whether the district court did or did not ultimately review certified documents submitted by the State, Defendant does not cite any authority requiring that documents used to prove prior convictions be certified copies. *See State v. Vigil-Giron*, 2014-NMCA-069, ¶ 60, 327 P.3d 1129 ("[A]ppellate courts will not consider an issue if no authority is cited in support of the issue and that, given no cited authority, we assume no such authority exists."). Even if a document is not self-authenticating under Rule 11-902 NMRA, our Rules of Evidence provide additional methods of authentication, including by demonstrating that the item is a public record, recorded or filed as authorized by law or from the office where items of the kind are kept. *See* Rule 11-901(B)(7) NMRA. Here, the State's exhibits pertaining to

Defendant's prior conviction include district court documents, and Defendant does not challenge whether such documents are public records. [2 RP 459]

**{10}** Further, the district court directed the State to submit certified copies of the documents and specified that it would impose the habitual offender enhancement upon receipt of the certified copies. [BIC 18] Although the record proper does not reflect the State's submission of the certified copies, Defendant identifies no basis on which we could assume the district court entered its judgment, sentence and commitment without having received the certified copies it requested from the State. *See Rojo*, 1999-NMSC-001, ¶ 53 ("Where there is a doubtful or deficient record, every presumption must be indulged by the reviewing court in favor of the correctness and regularity of the trial court's judgment." (alterations, internal quotation marks, and citation omitted)). We therefore conclude that Defendant has failed to demonstrate error by the district court on this issue. *See State v. Aragon*, 1999-NMCA-060, ¶ 10, 127 N.M. 393, 981 P.2d 1211 (recognizing the presumption of correctness in the district court's rulings and the appellant's burden of establishing error).

## IV.     Speedy Trial

**{11}** Lastly, Defendant contends that his right to speedy trial was violated. [BIC 20] The district court did not enter a written order denying Defendant's motion to dismiss based on speedy trial violations and orally denied the motion, stating that "the weighing against the State of the various elements aren't heavy enough to require dismissal. Plus, there's simply no prejudice, no actual prejudice to the defense." [BIC 21; 11-13-23 CD 10:02:28-03:35] "In determining whether a defendant's speedy trial right was violated, [New Mexico] has adopted the United States Supreme Court's balancing test in *Barker v. Wingo*, 407 U.S. 514 . . . (1972)." *State v. Smith*, 2016-NMSC-007, ¶ 58, 367 P.3d 420.

> Under the *Barker* framework, courts weigh "the conduct of both the prosecution and the defendant" under the guidance of four factors: (1) the length of the delay; (2) the reasons for the delay; (3) the timeliness and manner in which the defendant asserted his speedy trial right; and (4) the particular prejudice that the defendant actually suffered.

*Id.* (quoting *State v. Garza*, 2009-NMSC-038, ¶ 13, 146 N.M. 499, 212 P.3d 387). "In analyzing these factors, we defer to the district court's factual findings that are supported by substantial evidence, but we independently review the record to determine whether a defendant was denied [their] speedy trial right." *State v. Flores*, 2015-NMCA-081, ¶ 4, 355 P.3d 81.

**{12}** As for the first *Barker* factor, so long as the presumptively prejudicial period of delay has passed (twelve months for a simple case, fifteen months for an intermediate case, and eighteen months for a complex case), further inquiry into the *Barker* factors is warranted. *See Garza*, 2009-NMSC-038, ¶ 13. Here, the total delay amounted to two years, eleven months, and twenty days. [BIC 22, 24] Although the district court did not

make a conclusion regarding the complexity of the case, the total delay of over thirty-five months is presumptively prejudicial in even a complex case, thus warranting additional consideration of the *Barker* factors. *See id.* We do not find it necessary, however, to fully analyze each factor to resolve Defendant's speedy trial claim. As this Court has explained, "[i]n a speedy trial analysis, if any one of the [first] three *Barker* factors does not weigh heavily in favor of a defendant, . . . [the d]efendant must show particularized prejudice in order to prove their [right to] speedy trial was violated." *State v. Wood*, 2022-NMCA-009, ¶ 21, 504 P.3d 579 (proceeding to analyze the prejudice factor after determining that the second factor did not weigh heavily in the defendant's favor and providing, parenthetically, that "a defendant's failure to show particularized prejudice may preclude review of the *Barker* factors"). Defendant does not contend that any of the first three *Barker* factors weigh heavily in his favor. Nor could he, based on our review of the record and relevant law. In light of this, Defendant must make a showing of particularized prejudice to prevail on his speedy trial claim. *See Wood*, 2022-NMCA-009, ¶ 21.

{13}    "We analyze prejudice to a defendant in a speedy trial case in light of three defense interests: (i) to prevent oppressive pretrial incarceration; (ii) to minimize anxiety and concern of the accused; and (iii) to limit the possibility that the defense will be impaired." *Smith*, 2016-NMSC-007, ¶ 60 (internal quotation marks and citation omitted). "As to the first two types of prejudice, some degree of oppression and anxiety is inherent for every defendant who is jailed while awaiting trial. Therefore, we weigh this factor in the defendant's favor only where the pretrial incarceration or the anxiety suffered is undue." *Garza*, 2009-NMSC-038, ¶ 35 (alterations, internal quotation marks, and citations omitted). "Defendant bears the burden of demonstrating and substantiating prejudice." *State v. Parrish*, 2011-NMCA-033, ¶ 32, 149 N.M. 506, 252 P.3d 730.

{14}    In this case, Defendant was not incarcerated pending trial. [BIC 20, 28] Further, Defendant does not claim that his defense was impaired as a result of the delay. Accordingly, we confine our analysis to the second type of prejudice to review whether the anxiety Defendant suffered was undue. *See Garza*, 2009-NMSC-038, ¶ 35. Defendant makes a generalized argument that he was prejudiced while awaiting trial because his freedom of movement was restricted, he lost his residence and had to live off of charity, and he had to move away from Farmington. [BIC 20, 28] However, Defendant has not provided any details of his anxiety that would show what he suffered was "undue" and therefore has not made a particularized showing of prejudice. *See id.* ¶ 40. Defendant asserts that he requested an evidentiary hearing in the district court to determine particularized prejudice, and that the district court denied such request. [BIC 28] Defendant, however, does not contend that he could have made any additional showing of prejudice had an evidentiary hearing been held; nor does he claim it was error for the district court to rule on his speedy trial motion without such a hearing. As such, we conclude that this factor does not weigh in Defendant's favor. *See State v. Gallegos*, 2016-NMCA-076, ¶ 31, 387 P.3d 296 (explaining that "although [the d]efendant's failure to show particularized prejudice is not dispositive to his claim of a speedy trial right violation, the prejudice factor of the speedy trial analysis does not weigh in [the d]efendant's favor" where particularized prejudice is not shown); *Garza*,

2009-NMSC-038, ¶ 37 (stating that "some non[]particularized prejudice is not the type of prejudice against which the speedy trial right protects" (alteration and internal quotation marks omitted)). In sum, Defendant has failed to make a particularized showing of prejudice and, accordingly, we conclude his right to a speedy trial was not violated.

**{15}** For the foregoing reasons, we affirm.

**{16}  IT IS SO ORDERED.**

**GERALD E. BACA, Judge**

**WE CONCUR:**

**JACQUELINE R. MEDINA, Chief Judge**

**JENNIFER L. ATTREP, Judge**